J-A21027-19

2020 PA Super 171

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                  :       PENNSYLVANIA
                                  :
          v.                  :
                                  :
                                  :
DANIEL TALLEY                :
                                  :
         Appellant            :    No. 2627 EDA 2018

Appeal from the Judgment of Sentence Entered August 24, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0005241-2017

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

OPINION BY OLSON, J.:                             **FILED JULY 17, 2020**

Appellant, Daniel Talley, appeals from the judgment of sentence entered

on August 24, 2018 in the Criminal Division of the Court of Common Pleas of

Montgomery County.  We affirm.

The trial court summarized the factual and procedural history of this

case as follows.

> In March 2016, Christa Nesbitt met [Appellant] while working as
> a waitress at the Whistle Stop diner in Oreland, Pennsylvania.
> [Appellant] regularly frequented the diner and began a romantic
> relationship with Ms. Nesbitt in the spring of 2016.  In September
> 2016, Ms. Nesbitt and her daughter, [R.N.], moved into
> [Appellant's] house.  Ms. Nesbitt eventually broke up with
> [Appellant] and moved out of [Appellant's] home on May 27,
> 2017.  The following day[,] Ms. Nesbitt began to receive
> threatening and harassing text messages and [electronic-mails
> ("e-mails")] from unfamiliar addresses.  The messages came from
> e-mail addresses including, *inter alia*, "maxkillin@gmx.com" and
> "nastybtch@cumof... ."  Ms. Nesbitt stated that she had never
> received such messages prior to leaving [Appellant] and did not
> know of any grudges that anyone else might hold toward her at
> that time.

The subject messages repeatedly referred to Ms. Nesbitt in a vulgar and derogatory manner and included threats such as "I was up da stret from ur hous my gun was loaded nd I was going to end everythin we cld die 2getter," "ur time is runin out slut u stole dat kid from me u never be safe u slut." The sender of these messages ostensibly intended for Ms. Nesbitt to believe the messages were being sent from [R.N.'s] biological father, [Korey McClellan].[] Ms. Nesbitt testified there was no animosity between her and Mr. McClellan at the time these messages were sent. Some of the messages were received while Mr. McClellan was in her presence and she did not observe him sending any messages at those times. Mr. McClellan also denied sending any such messages. Mr. McClellan stated that he harbored no ill will or animosity toward Ms. Nesbitt after their relationship ended.

On June 2, 2017, Ms. Nesbitt received a text message saying that the sender was observing her at a Friendly's restaurant. Ms. Nesbitt was, in fact, at a Friendly's restaurant with her daughter and a friend when she received this text message. Ms. Nesbitt went to the Springfield Police Department to report this incident. An investigation of her [telephone] by Detective Robert Chiarlanza revealed that an application on her [telephone], unbeknownst to her, was sharing her location with "Daniel Talley."

Ms. Nesbitt continued to receive vulgar, harassing and, at times, threatening text messages every day, multiple times a day until approximately mid-July 2017. She estimated that she received hundreds of messages of this nature during that time. The messages referenced elements of [Appellant's] and Ms. Nesbitt's prior sexual relationship that only [Appellant] knew about, such as when [Appellant] would pressure Ms. Nesbitt to have anal sex with him. The messages also used expressions that were specific to [Appellant], such as "fake love," an expression [Appellant] would often use when accusing Ms. Nesbitt of cheating on him. Ms. Nesbitt repeatedly asked the sender of the messages to stop sending her messages. On June 14, 2017, Detective Chiarlanza confronted [Appellant] at his home and warned him to stop sending Ms. Nesbitt threatening and harassing text messages.

On June 19, 2017, Ms. Nesbitt received a message with the subject "Tick tock" which read, in part, "It gonna happen, slut. You gonna pay. Comin' soon mybe on Fox stet. You seem to like it der." Ashley-Lynn Donnelly, a friend and neighbor of Ms. Nesbitt, testified that on the night of June 19, 2017, between

11:30 p.m. and midnight, she was sitting on a neighbor's porch on Plymouth Avenue when she saw [Appellant's] truck idling [without its headlights]. It began driving up and down Plymouth Avenue. After passing her a third time, she heard two loud bangs and she then went inside. She suspected these bangs may have been gunshots. Ms. Donnelly sent Ms. Nesbitt a text that night [saying] that [Appellant's] truck was near Ms. Nesbitt's parent's house where Ms. Nesbitt was staying. The following day, June 20, 2017, Ms. Nesbitt noticed a bullet hole in her vehicle.

On June 20, 2017, Detective Chiarlanza went to investigate a report that a car was shot on Plymouth Avenue. His investigation revealed that "there was a bullet hole on the driver's side that entered into the passenger compartment behind the rear door." A small bullet fragment was recovered from the rear passenger compartment of the vehicle. That same day the police obtained and executed two search warrants for [Appellant's] home and an arrest warrant for [Appellant]. [Appellant] was in the driveway of his residence next to his truck armed with a loaded Kel-Tec .380 semiautomatic pistol when the police arrived. Detective Chiarlanza testified the gun in [Appellant's] possession was capable of producing a bullet hole similar to the one found in Ms. Nesbitt's vehicle.

Investigation of [Appellant's] home revealed a security camera. The video from the night of June 19, 2017 showed [Appellant] entering his home at 11:56 p.m., shortly after the time Ms. Donnelly testified [Appellant] was driving his truck on Plymouth Avenue when she heard two loud bangs. [Appellant] lived only a few blocks from where the shooting occurred and had time to return home within a few minutes of the shooting.

A search of [Appellant's] computer revealed that he had searched the internet for terms including, *inter alia*, "VPN [Virtual Private Network]," "Torproject.org" and "Private Internet access." [Appellant] had searched for these terms on June 16, 2017, two days after Detective Chiarlanza first visited [Appellant's] house. Using a VPN and Tor, a web browser, allows a person to [conduct anonymous searches] or hide their online presence and activity. [Appellant] also had a virtual machine installed on his computer allowing him to conceal any activity conducted on that computer by completely compartmentalizing that activity within the virtual machine so that it could later be deleted without a trace. Analysis of [Appellant's] computer further revealed that he had been

- 3 -

learning how to send e-mails from fictionalized e-mail addresses to cellular telephone numbers using a website. There was also evidence that on June 20, 2017, [Appellant] accessed the online schedule that Ms. Nesbitt used for her job.

An extraction of [Appellant's cellular telephone] data revealed deleted text messages to a David Wolf which included, *inter alia*, a message asking "Is there a way to spam a [cellular telephone] with so many texts and call[s] it just totally fucks it up?" When Mr. Wolf responded that this would likely be illegal and could easily be traced, [Appellant] stated "That's what TOR is for." Mr. Wolf then responded, "I guess. Then you'd have to find an online script that sends SMS [short message service] anonymously, and will accept input from an anonymized browser."

Ms. Nesbitt did not receive any more threatening or harassing messages after [Appellant's] arrest on July 18, 2017 when he no longer had access to [cellular telephones] or computers.

[Appellant testified in his own defense and] denied sending any of the subject messages[. He also] testified that such messages had been coming from Mr. McClellan for months before [Appellant's] breakup with Ms. Nesbitt. He testified that there was animosity between Ms. Nesbitt and Mr. McClellan and that Ms. Nesbitt was afraid of Mr. McClellan. [Appellant] also testified that the virtual machine installed on his computer was to avoid viruses when his daughter used the computer to play games. The VPN, he explained, was required for work. Detective Chiarlanza testified in rebuttal that based on his experience and similar investigations it was not feasible the VPN software [Appellant] installed on his computer was being used for [Appellant's] employment.

On July 26, 2018, the jury found [Appellant] guilty of [two counts of] stalking[, pursuant to 18 Pa.C.S.A. § 2709.1(a)(1) and § 2709.1(a)(2),] and [one count each of] terroristic threats [(18 Pa.C.S.A. § 2706(a)(1))] and harassment [(18 Pa.C.S.A. § 2709(a)(2)),] but deadlocked on the charges of recklessly endangering another person and simple assault. [Appellant] was sentenced on August 24, 2018. On August 30, 2018, [Appellant] filed a notice of appeal to [this Court]. On September 5, 2018, the [trial] court ordered [Appellant] to file a concise statement of [errors] complained of on appeal in accordance with Pa.R.A.P. 1925(b). On October 1, 2018, the [trial] court granted [Appellant] an extension of time to file his [Rule 1925(b)] concise statement.

On October 23, 2018, [Appellant] filed a concise statement of [errors] complained of on appeal. On October 25, 2018, [Appellant] filed an amended concise statement. [The trial court issued its opinion on December 14, 2018.]

Trial Court Opinion, 12/14/18, at 1-6.

Appellant's brief identifies three issues for our review:

Does Article 1, § 14 of the Pennsylvania Constitution violate the Due Process Clauses of the United States Constitution both facially and as applied against [Appellant]?

[Do] concurrent sentences based upon [convictions under] the two subsections of 18 Pa.C.S.A. [§] 2709.1(a) [(proscribing differing forms of stalking)] constitute double punishment [for] the same statutorily proscribed conduct and thus an illegal sentence?

Was the admission of screenshots of text messages and emails an abuse of discretion and a misapplication of the Best Evidence Rule as codified by the Pennsylvania Rules of Evidence 1001-1004?

Appellant's Brief at 2-3.[1]

Appellant's first issue alleges that he was wrongfully detained prior to trial pursuant to Article 1, § 14 of the Pennsylvania Constitution.[2] Specifically,

_____

[1] We have re-ordered Appellant's issues to facilitate our discussion.

[2] An order pertaining to bail is ordinarily subject to immediate review pursuant to Pa.R.A.P. 1762(b)(2). *See Commonwealth v. Parsons*, 166 A.3d 1242, 1245 (Pa. Super. 2017). Appellant, however, did not pursue this course of action but instead challenged the denial of nominal bail in the context of his direct appeal from a judgment of sentence. We have not deemed this issue to be moot since Appellant claims, in part, that the wrongful denial of nominal bail deprived him of a meaningful opportunity to assist in his own defense and, as such, contributed to his conviction.

Appellant asserts that Article 1, § 14 of the Pennsylvania Constitution[3] violates, both facially and as applied, the procedural and substantive components of the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution. Appellant maintains that Article 1, § 14 affords insufficient procedures to enable a judicial officer to evaluate the likelihood of potential danger posed by a detainee. *See* Appellant's Brief at 32-44 and 45-47. Because of these procedural deficiencies, Appellant further contends that Article 1, § 14 is excessive in relation to the regulatory goal of pre-trial detention predicated upon an identified threat an arrestee poses toward an individual or the community. *See id*. at 47-54. The Commonwealth asserts that Appellant waived his federal due process claims. *See* Commonwealth Brief at 8-9 and 20-24. After careful consideration, we agree with the Commonwealth that Appellant failed to preserve his federal due process challenges for appellate review.

A brief review of the relevant factual history is essential to our resolution of this claim. Police officials arrested Appellant on July 18, 2017 and a criminal

---

[3] In relevant part, Article 1, § 14 of the Pennsylvania Constitution states:

> All prisoners shall be bailable by sufficient sureties . . . unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great.

Pennsylvania Constitution Article 1, § 14.

complaint was filed on August 7, 2017. Appellant's bail was set at $250,000.00. On January 8, 2018, Appellant moved for release on nominal bail. The motion alleged that Appellant was entitled to relief pursuant to Pa.R.Crim.P. 600(B) and (D)(2), which permit an individual who has been incarcerated in excess of 180 days from the filing of a criminal complaint to file a written motion seeking release on nominal bail, subject to any nonmonetary condition imposed by the court and permitted by law. *See* Pa.R.Crim.P. 600(B) and (D)(2); Motion for Release on Nominal Bail, 1/8/18.

The trial court heard oral argument on Appellant's nominal bail motion on May 1, 2018. At oral argument, the Commonwealth conceded that Appellant had been incarcerated for more than 180 days since the filing of the criminal complaint. In addition, defense counsel conceded that the court, in deciding the motion, could consider the affidavit of probable cause filed in support of the charges against Appellant. On May 9, 2018, the trial court denied Appellant's motion for release on nominal bail, concluding that no condition, or combination of conditions, could ensure the safety of the community or Ms. Nesbitt. *See* Trial Court Opinion, 12/14/18, at 7. Appellant, on May 11, 2018, moved for reconsideration of the trial court's denial of his nominal bail motion. Among other contentions, Appellant's motion for reconsideration raised constitutional challenges based upon Article 1, § 13 of the Pennsylvania Constitution (prohibiting excessive bail and fines and infliction of cruel punishments) and the Eighth Amendment to the United

States Constitution (prohibiting cruel and unusual punishments). The trial court entertained argument on Appellant's reconsidered motion on June 28, 2018 and denied the motion on July 11, 2018.

The certified record confirms that Appellant waived appellate review of his federal due process claims challenging the validity of Article 1, § 14 of the Pennsylvania Constitution. Critically, the record reflects that Appellant never raised these federal constitutional challenges in his original motion for nominal bail, the hearing on that motion, his motion for reconsideration, or at argument on the reconsidered motion. In fact, Appellant first raised his procedural and substantive due process claims in his October 23, 2018 concise statement, which he filed after his notice of appeal. Because Appellant did not properly preserve his federal due process challenges before the trial court, he cannot litigate them for the first time on appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Beemac Trucking, LLC v. CNG Concepts, LLC**, 134 A.3d 1055, 1058 (Pa. Super. 2016) ("An issue raised for the first time in a concise statement is waived [because an issue raised for the first time after the filing of a notice of appeal deprives the trial court of the opportunity to consider the claim]."); **Commonwealth v. Lawrence**, 99 A.3d 116, 122 (Pa. Super. 2014) (claims challenging constitutionality of statutory provisions are generally subject to waiver), *appeal denied*, 114 A.3d 416 (Pa. 2015).

To the extent Appellant's brief develops a claim alleging that the trial court improperly denied nominal bail pursuant to Pa.R.Crim.P. 600(D)(2), we conclude that Appellant is not entitled to relief.[4] Appellant's claim here is that the Commonwealth failed to present witnesses or offer other proof that no condition or combination of conditions could reasonably assure the safety of the victim or the community. **See** Appellant's Brief at 33. As such, Appellant maintains that the Commonwealth failed to meet its burden of proof at the bail hearing. **Id.** We conclude that the record contained sufficient evidence to show that no condition or combination of conditions could reasonably assure the safety of the victim or the community. Hence, the trial court did not abuse its discretion in refusing Appellant's request for nominal bail.

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." **Commonwealth v. Hunt**, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*). Our scope of review

---

[4] Although the focus of Appellant's nominal bail claim centers upon the alleged deprivation of Appellant's substantive and procedural due process rights under the United States Constitution, his brief forwards a claim that the Commonwealth failed to meet its burden of proof in demonstrating that bail would be inappropriate under Pa.R.Crim.P. 600(D)(2) and Article 1, § 14 of the Pennsylvania Constitution. Appellant preserved this claim by litigating a motion for release on nominal bond and by including the claim in his Rule 1925 concise statement. Although Appellant did not expressly include a challenge to the trial court's denial of nominal bail in his statement of questions involved as required by Pa.R.A.P. 2116(a) (precluding appellate review unless issue is stated in statement of questions involved or is fairly suggested thereby), we shall overlook this omission as it has not hampered our review.

is limited to the findings of the trial court and the evidence of record generated at the Rule 600 evidentiary hearing, which we view in the light most favorable to the prevailing party. *Id.* at 1238-1239.

Rule 600(D)(2) of the Pennsylvania Rules of Criminal Procedure provides, in relevant part:

> [W]hen a defendant is held in pretrial incarceration beyond the time set forth in paragraph (B), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the defendant be released immediately on nominal bail subject to any nonmonetary conditions of bail imposed by the court as permitted by law. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600(D)(2). Rule 600(B)(1) states: "[N]o defendant shall be held in pretrial incarceration in excess of . . . 180 days from the date on which the criminal complaint is filed." Pa.R.Crim.P. 600(B)(1). Even if a defendant has been incarcerated for at least 180 days from the date on which the complaint was filed, a trial court retains discretion to deny release on nominal bail if "no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community." ***Commonwealth v. Jones***, 899 A.2d 353, 355 (Pa. Super. 2006), *quoting* PA. CONST., art. I, § 14.

In its Rule 1925(a) opinion, the trial court set forth its reasons for denying Appellant's nominal bail motion pursuant to Rule 600(D)(2). It stated:

Given the nature of the allegations in this case and the substantial evidence that appeared in the affidavit of probable cause supporting the complaint, the court determined that no combination of conditions could ensure the safety of the community and in particular the victim, Christa Nesbitt. This was based on the escalating pattern of threatening and harassing messages received by Ms. Nesbitt, including mention of firearms and death threats against Ms. Nesbitt. There was substantial circumstantial evidence in the affidavit of probable cause linking [Appellant] to these messages, including forensic analysis of his computer and [cellular telephones] that revealed research into "spamming" a [telephone] with text messages, researching online when text messages become criminal harassment, and concerted efforts to anonymize his online activity. More significantly, Ms. Nesbitt's vehicle was shot on the night of June 19, 2017 and a witness placed [Appellant's] vehicle at the scene immediately before a loud bang was heard. [Appellant] was arrested on June 20, 2017 and released on bail on June 22, 2017. The harassing and threatening messages stopped while [Appellant] was in jail but resumed within an hour of [Appellant's] release on bail. The vulgar and threatening messages continued until July 12, 2017, just days before [Appellant] was again arrested on July 18, 2017. The court concluded the totality of circumstances indicated that [Appellant] likely was the author of these threatening messages, was physically stalking [Ms. Nesbitt,] and fired a bullet into her car. There was no combination of conditions within the court's power that could ensure the safety of Ms. Nesbitt and the community.[FN A] Accordingly, the court properly denied [Appellant's] motion for release on nominal bail.

---

[FN A] The court suggested that [Appellant] be released on house arrest with electronic monitoring but was advised this option is not available in Montgomery County prior to sentencing.

---

Trial Court Opinion, 12/14/18, at 7-8.

We cannot agree with Appellant that the Commonwealth failed to demonstrate that no condition or combination of conditions could ensure the safety of the community or Ms. Nesbitt. Appellant's claim that the

Commonwealth failed to meet its burden rests on his contention that the prosecution produced no witnesses or other evidence at the Rule 600(D)(2) hearing. Defense counsel, however, conceded that the Commonwealth could rely on the factual averments in the affidavit of probable cause to oppose Appellant's motion. As the trial court observed, the affidavit of probable cause linked Appellant to numerous harassing text messages and violent threats issued to Ms. Nesbitt and set forth compelling proof that Appellant used a firearm to damage Ms. Nesbitt's vehicle. In addition, the trial court learned that house arrest with electronic monitoring was not available prior to sentencing. Under these circumstances, the trial court did not abuse its discretion in denying nominal bail to Appellant.

In his second claim, Appellant asserts that he received an illegal sentence when the trial court imposed separate punishments for each of his two stalking convictions. Following trial, the jury found Appellant guilty of one count of stalking pursuant to 18 Pa.C.S.A. § 2709.1(a)(1) and a second count of stalking pursuant to 18 Pa.C.S.A. § 2709.1(a)(2). Appellant maintains that the two subsections of the stalking statute do not constitute separate crimes, but merely serve as two alternate means of proving the same offense. *See* Appellant's Brief at 19. Hence, Appellant asserts that the trial court imposed an illegal sentence when it ordered distinct, consecutive punishments for his stalking convictions.

The merger of crimes for sentencing purposes is governed by the following principles and standard of review.

> Whether [a]ppellant's convictions merge for sentencing is a question implicating the legality of [a]ppellant's sentence. Consequently, our standard of review is *de novo* and the scope of our review is plenary. **See Commonwealth v. Collins**, 764 A.2d 1056, 1057, n.1 (Pa. 2001)[.]
>
> [42 Pa.C.S.A. § 9765] provides:
>
> **§ 9765. Merger of sentences**
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S.[A.] § 9765.
>
> The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.

**Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009).[5]

_____

[5] Appellant maintains that his contentions on appeal do not implicate the doctrine of merger. **See** Appellant's Reply Brief at 22-23. Instead, Appellant asserts that "the two stalking subsections [under which he was convicted are alternate] ways to prove the single crime of stalking rather than two distinct crimes." **Id**. at 22. In **Baldwin**, however, the Supreme Court anticipated the situation in which courts confront the issue of merging offenses defined under separate subsections of the same criminal statute. In **Baldwin**, the Court noted:

> [W]hile Section 9765 indeed focuses on an examination of "statutory elements," [the Court cautioned against ignoring] the

In relevant part, the Crimes Code defines the offense of stalking as follows:

### § 2709.1. Stalking

(a) Offense defined.--A person commits the crime of stalking when the person either:

(1) engages in a course of conduct or **repeatedly commits acts** toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person; or

(2) engages in a course of conduct or **repeatedly communicates** to another person under circumstances which demonstrate or communicate either an intent to place such other person in

_____

simple legislative reality that individual criminal statutes often overlap, and proscribe in the alternative several different categories of conduct under a single banner. *See*, *e.g.*, Aggravated Assault, 18 Pa.C.S.[A.] § 2702 (defining seven distinct violations of law); Involuntary Deviate Sexual Intercourse, 18 Pa.C.S.[A.] § 3123 (setting forth eight separate violations). Consequently, in such cases, [the Supreme Court admonished] that [] courts must take care to determine which particular "offenses," *i.e.* violations of law, are at issue in a particular case. *See*, *e.g.*, *Commonwealth v. Johnson*, 874 A.2d 66, 71 n.2 (Pa. Super. 2005) (recognizing that a particular subsection of a criminal statute may merge with another crime as a lesser-included offense even though a different subsection of that same statute may not).

*Baldwin*, 985 A.2d at 837 n.6.

Here, the two variants of stalking defined at 18 Pa.C.S.A. §§ 2709.1(a)(1) and 2709.1(a)(2) proscribe distinct categories of conduct under a single statutory heading. As such, they are subject to merger analysis under 42 Pa.C.S.A. § 9765. Thus, insofar as Appellant's argument relies on cases that predate the adoption of the merger statute, *see* Appellant's Brief at 62-65, his argument against application of § 9765 is unavailing.

reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

18 Pa.C.S.A. §§ 2709.1(a)(1) and (a)(2) (emphasis added).

As the plain language of 18 Pa.C.S.A. § 2709.1(a)(1) makes clear, an individual may be found guilty of stalking under § 2709.1(a)(1) where he or she "engages in a course of conduct or **repeatedly commits acts** toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress." 18 Pa.C.S.A. § 2709.1(a)(1) (emphasis added). The Commonwealth asserts that the following conduct on the part of Appellant met the criteria set forth in § 2709.1(a)(1): (1) Appellant observed Ms. Nesbitt at a Friendly's restaurant without her consent on June 2, 2017, as evidenced by his text message to that effect, Ms. Nesbitt's testimony confirming her presence at the restaurant on that date, and forensic evidence showing that Appellant installed an application on Ms. Nesbitt's cellular telephone which shared, without her consent, the location of her mobile telephone with Appellant; (2) observations made by Ms. Nesbitt's neighbor of Appellant in his truck in the vicinity of Ms. Nesbitt's parent's home between 11:30 p.m. and midnight on the evening of June 19, 2017 when a bullet was fired into Ms. Nesbitt's vehicle; and, (3) forensic evidence which showed that Appellant accessed, without Ms. Nesbitt's consent, an online schedule used by Ms. Nesbitt in her employment. ***See***

Commonwealth's Brief at 27, *citing* N.T. Trial, 7/23/18, at 88-89, 141-142 and N.T. Trial, 7/24/18, at 334.

In addition, the plain text of 18 Pa.C.S.A. § 2709.1(a)(2) states that an individual may be held criminally liable for stalking under § 2709.1(a)(2) if he or she "engages in a course of conduct or **repeatedly communicates** to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress."  18 Pa.C.S.A. § 2709.1(a)(2) (emphasis added).  The Commonwealth argues that repeated instances in which Appellant sent harassing text messages to Ms. Nesbitt satisfied this subsection.  *See* Commonwealth Brief at 26.

We have carefully reviewed the notes of testimony from Appellant's trial, together with the statutory language defining the offense of stalking at 18 Pa.C.S.A. §§ 2709.1(a)(1) and (a)(2).  Based upon our review, we are satisfied that Appellant's convictions for stalking under § 2709.1(a)(1) and § 2709.1(a)(2) did not arise from a single criminal act.  Moreover, since § 2709.1(a)(1) proscribes "courses of conduct or the repeated commission of acts" and § 2709.1(a)(2) prohibits "courses of conduct or repeated communications," we are convinced that not all of the elements of one subsection of § 2709.1 are included in the other, or *vice versa*.  As such, Appellant's stalking convictions under § 2709.1(a)(1) and § 2709.1(a)(2) do

not merge under 42 Pa.C.S.A. § 9765 and the trial court did not err in imposing separate punishments for those convictions.

Appellant's final claim asserts that the trial court erred and/or abused its discretion in admitting "screenshots," or photographs of the text messages depicted on Ms. Nesbitt's cellular telephone, in contravention of the best evidence rule as adopted in Pa.R.E. 1001, 1002, 1003, and 1004. According to Appellant, neither the screenshots, nor any testimony relating to their content, were admissible since the screenshots did not meet the criteria of "original" writings or "duplicates" under the evidentiary rules. Furthermore, per Appellant, the screenshots needed to qualify either as originals or duplicates since the Commonwealth's "entire case against [Appellant] hinged on whether he was the sender of a slew of vulgar and anonymous text messages" and Appellant's defense centered on his claim that "he was not the sender, but that, in fact, his [former]-girlfriend Ms. Nesbitt had been receiving similar messages even before [their relationship ended]." Appellant's Brief at 19. In challenging the admission of the screenshots, as opposed to complete transcriptions of the downloaded contents of Ms. Nesbitt's cellular telephone, Appellant emphasizes that the screenshots omitted certain content found within the messages, including "hyperlinks[6] to a website that could have shed

_____

[6] A hyperlink is an "element on a webpage – usu. a word, phrase, or graphic, but sometimes a single pixel – that when clicked on, takes the user to another

light on who sent the messages" and "important metadata[7] such as a full list of the participants [in] the messages, the source [of the message], the number of attachments, and the start time and time of last activity." **Id.** at 20. Not only did the screenshots omit features that could have identified the sender of the messages, the failure to secure the original text messages was inexcusable since police authorities had both the capability and opportunity to fully download Ms. Nesbitt's cellular telephone. **See id**.

We apply the following standard and scope of review when reviewing a challenge to a trial court's evidentiary rulings.

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

---

part of the same website or to a different website." Black's Law Dictionary at 759 (8th Ed. 2004).

7 Metadata is data that describes and gives information about other data. Merriam-Webster's Collegiate Dictionary at 779 (11th Ed. 2003). Metadata may be used to summarize basic information about data to facilitate the tracking and manipulation of specific information. Some examples of metadata include information about the location on a computer network where certain data has been created, as well as information about the size of a digital file or the standards used in the creation, storage, or transmission of the file.

***Geise v. Nationwide Life and Annuity Co. of America***, 939 A.2d 409, 417

(Pa. Super. 2007) (internal citations and quotations omitted).

We begin with an overview of the relevant principles that govern

Appellant's challenge. The common law best evidence rule is presently

codified at Pa.R.E. 1001-1004. Pursuant to Rule 1002, "[a]n original writing,[8]

recording, or photograph is required in order to prove its content unless these

rules, other rules prescribed by the Supreme Court, or a statute provides

otherwise."9 Pa.R.E. 1002. If neither an original nor a duplicate writing is

_____

[8] For purposes of the best evidence rule, "[a] writing consists of letters, words, numbers, or their equivalent set down in any form." Pa.R.E. 1001(a). Moreover, the original of a writing refers to "the writing … itself or any counterpart intended to have the same effect by the person who executed or issued it. For electronically stored information, 'original' means any printout – or other output readable by sight – if it accurately reflects the information." Pa.R.E. 1001(d). Duplicates are defined as "cop[ies] produced by mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces [an] original." Pa.R.E. 1001(e). Rule 1003 states: "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003.

[9] The commentary appended to Rule 1002 explains that the common law formulation of the best evidence rule applied whenever the terms of a writing were "material," a requirement that is now dealt with in Pa.R.E. 1004(d). ***See*** Pa.R.E. 1002, cmt.; ***see also Commonwealth v. Green***, 162 A.3d 509, 518 (Pa. Super. 2017) (*en banc*). Pa.R.E. 1004(d) provides that an original is not required when a writing, recording or photograph is unrelated to a controlling issue. ***See*** Pa.R.E. 1004(d). Pa.R.E. 1004 also identifies additional circumstances in which the requirement of an original may be excused and other evidence of content permitted, but these circumstances are not present in this appeal. ***See*** Pa.R.E. 1004(a) (excusing requirement of original when all originals are lost or destroyed by any action other than the proponent acting in bad faith), 1004(b) (excusing requirement of original where original

introduced, testimony is inadmissible to prove content. ***Commonwealth v. Lewis***, 623 A.2d 355, 358 (Pa. Super. 1993). The comment to Rule 1002 sets forth several underlying policy considerations for the requirement of an original writing. In relevant part, it states:

> This rule corresponds to the common law "best evidence rule." ***See Hera v. McCormick***, 625 A.2d 682 (Pa. Super. 1993). [C]ommentators have [identified] four reasons justifying the rule.
>
> (1) The exact words of many documents, especially operative or dispositive documents, such as deeds, wills or contracts, are so important in determining a party's rights accruing under those documents.
>
> (2) Secondary evidence of the contents of documents, whether copies or testimony, is susceptible to inaccuracy.
>
> (3) The rule inhibits fraud because it allows the parties to examine the original documents to detect alterations and erroneous testimony about the contents of the document.

---

cannot be obtained by any available judicial process), and 1004(c) (excusing the requirement of an original where the party against whom the original would be offered had control of the original, was on notice that the original would be a subject of proof at a trial or hearing, and failed to produce the original at the trial or hearing).

Although no definitive test determines when a writing is related to a controlling issue because a party must prove its contents, writings that are viewed as "operative or dispositive" have usually been considered subject to the rule. ***See*** Pa.R.E. 1002, cmt. Writings that merely evidence a transaction, thing, or event are generally not subject to the rule. ***See id.***; ***see also Hamill-Quinlan, Inc. v. Fisher***, 591 A.2d 309, 313 (Pa. Super. 1991).

Here, the Commonwealth offered the screenshots to prove Appellant's culpability in harassing and stalking Ms. Nesbitt. For this reason, as discussed more fully below, we conclude that the screenshots were central to certain controlling issues in the case and that the best evidence rule governed their admission relevant to those issues at trial.

(4) The appearance of the original may furnish information as to its authenticity.

Pa.R.E. 1002, cmt., *quoting* 5 Weinstein & Berger, Weinstein's Evidence § 1002(2) (Sandra D. Katz rev. 1994). This Court has also observed that, "in light of the added importance that the fact-finder may attach to the written word, it is better to have available the exact words of a writing, to prevent the [erroneous transmission of] critical facts which accompanies the use of written copies or recollection, and to prevent fraud." **Lewis**, 623 A.2d at 358.

To recount, Appellant's claim is that the best evidence rule required the Commonwealth to produce original versions of the text messages or, failing that, duplicate copies that accurately reproduced the originals. Appellant contrasts the screenshots of Ms. Nesbitt's telephone against full forensic downloads such as those performed on Appellant's cellular telephone.[10] Appellant points out that while the forensic downloads showed the status of a message (**e.g.** read or not read), the date and time the messages was read, from whom and to whom the messages was sent (including the name and telephone number), the source (**e.g.** iMessage), the name of the body file, and the content of the message, screenshots of the text messages sent to Ms. Nesbitt's telephone omitted hyperlinks, metadata, and the content of certain messages. **See** Appellant's Brief at 23. Appellant's position is that because

_____

[10] Forensic downloads on Appellant's cellular telephone failed to produce evidence of text messages sent to Ms. Nesbitt or evidence showing that Appellant was the sender of such text messages.

the screenshots omitted hyperlinks, metadata, and certain content found in the original text messages, the screenshots do not fall within the definition of an "original electronic document" since they cannot constitute a printout, or other sight-readable output, that **accurately** reflected information found in the source writing. *See* Appellant's Brief at 23-24, *citing* Pa.R.E. 1001(d) (definition of original writing). Appellant also argues that the same omissions exclude the screenshots from the definition of "duplicates" since they did not accurately reproduce the original text messages. *See* Appellant's Brief at 24. Because the screenshots did not qualify as either originals or duplicates of the text messages, the trial court erred in admitting the screenshots, as well as any content-related testimony.

In the alternative, Appellant argues that even if the challenged screenshots qualified as duplicates, they nevertheless should not have been admitted. Citing Pa.R.E. 1003 and the commentary to Rule 1002, Appellant argues that genuine issues surrounding the authenticity of the original text messages compel the conclusion that the screenshots were not admissible duplicates. In questioning the authenticity of the original communications, Appellant accuses Ms. Nesbitt of manipulating her pretrial statements to the police to make her story more consistent with the idea that Appellant sent the offending text messages. *See* Appellant's Brief at 27, *citing* N.T. Trial, 7/23/18, at 185-186. Appellant also cites his own testimony as undermining the Commonwealth's theory that he began sending the messages only after

his relationship with Ms. Nesbitt ended. *See* Appellant's Brief at 27. In view of these genuine issues surrounding the source and authenticity of the original messages, Appellant claims that information contained in the original texts (such as hyperlinks, metadata, and certain content), but omitted from the screenshots, could have proven that Appellant was not the sender. Under these circumstances, Appellant concludes "it was fundamentally unfair for the trial court to admit the screenshots in place of the original messages." Appellant's Brief at 28.

The trial court held that the screenshots constituted "original writings" within the definition of Rule 1001(d), which provides that originals of electronically stored information include "any printout – or other output readable by sight – [that] accurately reflects the information." Trial Court Opinion, 12/14/18, at 22, *quoting* Pa.R.E. 1001(d). The court considered the original text messages to be electronically stored information which represented data stored on the devices of both the sender and recipient, as well as on the servers of the service providers. *See* Trial Court Opinion, 12/14/18, at 22. As such, the court determined that the screenshots of the text messages received by Ms. Nesbitt were printouts of the electronic communications she received, which fell within the definition of an original writing under Rule 1001(d). *See id*.

The trial court also rejected Appellant's claim that only access to full downloads of the text messages received by Ms. Nesbitt, with accompanying

access to related metadata, would facilitate authentication of the screenshots as accurate reproductions of original material. While the court acknowledged that metadata might aid in verifying the source or sender of the messages, the court expressed skepticism as to how the metadata could verify the accuracy of the screenshots in depicting the content of the challenged communications. *See id*. Here, the court noted Ms. Nesbitt's testimony in which she confirmed that the screenshots accurately reflected the messages she received. This was in line with the trial court's prior ruling on Appellant's motion *in limine*, in which the court said it would allow Ms. Nesbitt to authenticate the messages she received but consider, on a message-by-message basis, the factual basis for any opinion she rendered about the identity of the sender of each message. *See* N.T., 7/20/18, at 10 ("generally, [the court believes] it is appropriate that the victim is permitted to testify that she received these messages on her phone and she took a photograph of them. [The court believes] that's direct knowledge . . . if she begins to offer opinions as to who the sender is, then we will deal with what is the factual foundation that gives rise to that opinion . . . if there is a timely objection to that."). For these reasons, the court determined that the omission of metadata from the printed screenshots did not preclude their admission into evidence as originals pursuant to Pa.R.E. 1001(d) and 1002.

Finally, the trial court tacitly approved admission of the screenshots as duplicates under Pa.R.E. 1003. The court acknowledged the diminishing role

of the best evidence rule as it applied to copies generated through advanced technologies and improved methods of document reproduction. *See* Trial Court Opinion, 12/14/18, at 22, *quoting* Pa.R.E. 1003, cmt. ("[Under the traditional best evidence rule, copies of documents were not routinely admissible.] This view dated back to the time when copies were made by hand copying and were therefore subject to inaccuracy. On the other hand, Pennsylvania courts have admitted copies made by techniques that are more likely to produce accurate copies."). Since the screenshots were generated as digital photographs of the original text messages, a reliable form of reproduction recognized in Rule 1001(e), the court suggested in the alternative that the screenshots were properly admitted as duplicates under Rule 1003.[11] *See* Trial Court Opinion, 12/14/18, at 23.

_____

[11] For its part, the Commonwealth disputes Appellant's contention that the screenshots did not accurately reproduce the original text messages because of omitted hyperlinks, metadata, and content found in certain communications. Instead, the Commonwealth concurs in the trial court's conclusions that the screenshots were admissible either as originals under Rule 1002 or, alternatively, as duplicates under Rule 1003. *See* Commonwealth's Brief at 12-13. To support its position, the Commonwealth cites the definition of "metadata" found in Blacks Law Dictionary, which states: "[metadata includes] secondary data that organize[s], manage[s,] and facilitate[s] the use of primary data." *Id.* at 13, *quoting* Blacks Law Dictionary (10th ed. 2014). The Commonwealth then classifies the text in a text message as primary data (*i.e.* the writing) and the metadata as secondary data, which it deems as "extrinsic information" related to the writing. *See* Commonwealth's Brief at 13. According to the Commonwealth, a screenshot accurately represents the primary data (or original text message) even if it does not capture extrinsic secondary information. *Id.* at 13-14. As such, a screenshot is admissible as an original, since it constitutes a printout that

We conclude that the trial court neither erred nor abused its discretion in admitting the screenshots.  As a preliminary matter, the record confirms that the Commonwealth properly authenticated the screenshots prior to admission.[12]  Pennsylvania law holds that authentication is a threshold inquiry

_____

accurately reflects information, or as a duplicate, since it represents an accurate copy produced by photographic means.  ***Id***.  The Commonwealth also argues that the screenshots were properly authenticated under Pennsylvania law, which permits authentication of electronic messages through circumstantial evidence, including testimony from a sender or recipient and contextual clues in the communication tending to reveal the identity of the sender.  ***Id***. at 15, *citing* ***Commonwealth v. Mangel***, 181 A.3d 1154, 1160 (Pa. Super. 2018).

[12] Effective October 1, 2020, a new provision of the Pennsylvania Rules of Evidence, Pa.R.E. 901(b)(11) (governing authentication or identification of digital evidence), will provide in relevant part:

**Rule 901. Authenticating or identifying evidence**

(a) In General. Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples. The following are examples only—not a complete list—of evidence that satisfies the requirement:

∗∗∗

(11) Digital Evidence. To connect digital evidence with a person or entity:

(A) direct evidence such as testimony of a person with personal knowledge; or

(B) circumstantial evidence such as:

(i) identifying content; or

(ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11) has no counterpart in the Federal Rules of Evidence. "Digital evidence," as used in this rule, is intended to include a communication, statement, or image existing in an electronic medium. This includes emails, text messages, social media postings, and images. The rule illustrates the manner in which digital evidence may be attributed to the author.

The proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author. See Pa.R.E. 901(a).

Direct evidence under Pa.R.E. 901(b)(11)(A) may also include an admission by a party-opponent.

Circumstantial evidence of identifying content under Pa.R.E. 901(b)(11)(B)(i) may include self-identification or other distinctive characteristics, including a display of knowledge only possessed by the author. Circumstantial evidence of content may be sufficient to connect the digital evidence to its author.

Circumstantial evidence of ownership, possession, control, or access to a device or account alone is insufficient for authentication of authorship of digital evidence under Pa.R.E. 901(b)(11)(B)(ii). ***See, e.g., Commonwealth v. Mangel***, 181 A.3d 1154, 1163 (Pa. Super. 2018) (social media account bearing defendant's name, hometown, and high school was insufficient to authenticate the online and mobile device chat messages as having been authored by defendant). However, this evidence is probative in combination with other evidence of the author's identity.

Expert testimony may also be used for authentication purposes. ***See, e.g., Commonwealth v. Manivannan***, 186 A.3d 472 (Pa. Super. 2018).

for all evidence and provides that the following principles govern

authentication of digital communications such as text messages.

> Pursuant to Pennsylvania Rule of Evidence 901, authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. ***See*** Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. ***See*** Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). ***See*** Pa.R.E. 901(b)(4).
>
> Pennsylvania appellate courts have considered the authentication of computerized instant messages and cell[ular tele]phone text messages. ***See In the Interest of F.P., a Minor***, 878 A.2d 91, 96 (Pa. Super. 2005) (computerized instant messages); ***Commonwealth v. Koch***, 39 A.3d 996, 1005 (Pa. Super. 2011), *affirmed by an equally divided court*, 106 A.3d 705 (Pa. 2014) (cell phone text messages)[.]
>
> [In ***Koch***, this Court held that text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally. ***Koch***, 39 A.3d at 1004 (citations omitted). The ***Koch*** Court additionally observed that "electronic writings typically show their source, so they can be authenticated by contents in the same way that a communication by postal mail can be authenticated." ***Id***. at 1003. The panel in ***Koch*** was mindful, however, of the difficulty with establishing authorship of text message in certain cases. Because more than one individual can access an electronic device without permission, the ***Koch*** Court ruled, "authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." ***Id***. at 1005.]

Pa.R.E. 901(b)(11) and cmt. (effective October 1, 2020).

*Commonwealth v. Mangel*, 181 A.3d 1154, 1160 (Pa. Super. 2018). The Commonwealth must provide sufficient evidence from which a factfinder could reasonably ascertain the authenticity of the records (*i.e.* identity of the sender and confirmation that the document is what it purports to be) by a preponderance of the evidence. *See id*. at 1161.

The Commonwealth offered sufficient direct and circumstantial evidence to establish the authenticity of the screenshots. Ms. Nesbitt, as the recipient of the text messages depicted in the screenshots, offered direct authenticating testimony in which she confirmed that the screenshots accurately reflected the messages she received. *See Mangel*, 181 A.3d at 1162 (recognizing recipient or sender testimony as direct evidence of authenticity). In addition, the Commonwealth proffered circumstantial evidence that identified Appellant as the sender of the messages. Ms. Nesbitt testified that she never received harassing test messages before terminating her relationship with Appellant. N.T. Trial, 7/23/18, at 82. Ms. Nesbitt also testified that she received a harassing text message stating that the sender was observing her in a restaurant and police officials were later able to determine that an application installed on her cellular telephone was sharing her location with an individual named "Daniel Talley." *Id*. at 86-89. In addition, the text messages received by Ms. Nesbitt referred to specific sexual acts that occurred during intimate moments in the relationship between Appellant and Ms. Nesbitt. *Id*. at 123-124. Apart from Ms. Nesbitt, only Appellant possessed knowledge of

those acts. *Id.* The text messages received by Ms. Nesbitt also included phrases such as "fake love," an idiom commonly used by Appellant. *Id.* at 133-134. Lastly, police officials uncovered software on Appellant's computer that enabled him to send anonymous text messages. N.T. Trial, 7/24/18, at 306-309. In sum, the Commonwealth introduced direct testimony showing that the screenshots accurately reflected the text messages Ms. Nesbitt received. In addition, the Commonwealth produced circumstantial evidence linking Appellant to the messages received by Ms. Nesbitt, including Appellant's access to a device capable of sending anonymous text messages, displays of knowledge known only to Appellant and Ms. Nesbitt, and the use of distinct linguistic phrases commonly used by Appellant. The Commonwealth therefore met its burden of authenticating the screenshots.

Having concluded that the Commonwealth properly authenticated the screenshots, we turn now to Appellant's claim that the best evidence rule nevertheless barred their use at trial because they omitted certain features contained in the original text messages. Pertinent to this question, this Court has previously observed that:

> "Nevertheless[, the best evidence rule embodied at Pa.R.E. 1002] is applicable only in circumstances where the contents of the writing, recording or photograph are integral to proving the central issue in a trial[.] Consequently, if the Commonwealth is introducing a writing, recording, or photograph at trial, Rule 1002 requires that the original be introduced only if the Commonwealth must prove the contents of the writing, recording or photograph to establish the elements of its case." [**Commonwealth v. Fisher**, 764 A.2d 82, 88 (Pa. Super. 2000) ("The best evidence rule is controlling only if the terms of [the proposed evidence]

must be proved to make a case or provide a defense[.]") (citation omitted), *appeal denied*, 759 A.2d 385 (Pa. 2000)]. "The rule is not implicated just because evidence is relevant;" the rule applies if the writing, recording, or photograph is necessary to prove the elements of a case. [***Commonwealth v. Townsend***, 747 A.2d 376, 380-381 (Pa. Super. 2000)]. In other words, the content of the video must be material to, and not just mere evidence of, the issues at bar for the best evidence rule to apply. [***Lewis***, 623 A.2d at 358.] "If the Commonwealth does not need to prove the content of the writing or recording to prove the elements of the offense charged, then the Commonwealth is not required to introduce the original writing or recording." ***Commonwealth v. Dent***, 837 A.2d 571, 590 (Pa. Super. 2003)[;] ***see also Fisher***, ***supra*** ([no] violation of best evidence rule occurs with admission of duplicate tape recordings of defendant's taunting voice mail messages, where tapes did not establish fundamental components of any offenses charged); ***Townsend***, ***supra*** ([no] violation of best evidence rule occurred where trial court allowed detective to testify regarding content of defendant's written confession, even though written confession was not admitted into evidence; content of confession made persuasive evidence for Commonwealth's case but was not necessary to establish elements of crimes of burglary and assault, which had no elements requiring proof of content of confession or any other writing). The Comment to Rule 1002 suggests "recordings and photographs are usually only evidence of the transaction, thing or event. It is rare that a recording or photograph would be operative or dispositive[.]" Pa.R.E. 1002, [cmt].

***Commonwealth v. Green***, 162 A.3d 509, 518-519 (Pa. Super. 2017) (*en banc*).

Because Appellant's claims surrounding the features omitted from the screenshots implicate only the identity of the individual who sent the messages, and not the accuracy with which the screenshots depicted the contents of the original communications, we conclude that Appellant's claims fall outside the scope of the best evidence rule. We explain.

The gravamen of the Commonwealth's case against Appellant alleged that he harassed and stalked Ms. Nesbitt by sending her volumes of threatening text messages. Because those messages were the basis of the charges leveled by the Commonwealth against Appellant, the Commonwealth needed to prove that the "substantive content"[13] of the messages established the elements of the charged offenses. To prove the substantive content of the messages, the Commonwealth introduced the screenshots at trial. Moreover, because the content of the original messages was an essential component in a successful prosecution of Appellant, the Commonwealth, as the proponent of the screenshots, needed to demonstrate the admissibility of the screenshots under the best evidence rule. Insofar as the screenshots were introduced to establish the substantive content of the original text messages, we agree with the trial court that the screenshots were admissible, either as authenticated printouts of the original electronic text messages under Pa.R.E. 1001(d), or as authenticated duplicates generated through a photographic process that accurately reproduced the original messages within the contemplation of Pa.R.E. 1001(e).

Although Appellant repeatedly takes aim at "genuine issues of authenticity" involving the original text messages and the resultant unfairness

_____

[13] We employ the term "substantive content" to refer to the content of the original text messages received by Ms. Nesbitt separate and apart from the hyperlinks, metadata, and limited portions of text that were omitted from the screenshots.

of admitting the screenshots as originals or as duplicates in their place, in point of fact Appellant's challenge is wholly focused on the potential probative value of the omitted features in showing the source of the offending communications.[14]  Appellant does not claim that omissions in the screenshots lead to inaccuracies in their depiction of the substantive content of the original text messages.  In addition, Appellant does not allege that the omitted features rendered the screenshots incapable of showing that the original communications established the elements of the charged offenses.  Most importantly, Appellant does not claim that the hyperlinks, metadata, and other content found in the original text messages, but omitted from the screenshots, were material or essential in proving the identity of the individual who authored or sent the text messages.  Put differently, Appellant does not allege that either he or the Commonwealth needed to prove the content of the original text messages in order to show who sent the original communications.  Instead, Appellant's claim is only that the omitted features may have facilitated an assessment of the authorship of the messages and, therefore, may have some relevance in determining the identity of the sender.  While Appellant may be correct that the omitted features possessed some probative value in identifying the author of the original communications, he has not

_____

[14] As we stated above, the Commonwealth properly authenticated the screenshots by introducing direct and circumstantial evidence to show that they were what they purported to be and that they could be linked to Appellant as the author and sender of the communications.

alleged, much less shown, that the content of those communications was **essential** in proving who sent the messages. In the absence of such a showing, the original messages, along with the hyperlinks, metadata, and other content omitted from the screenshots, possessed only potential relevance concerning the messages sent to Ms. Nesbitt. The best evidence rule is triggered, however, only when the contents of a writing are essential, not merely relevant, in proving a claim or defense. *See Townsend*, 747 A.2d at 380-381. As such, the trial court did not violate the best evidence rule in admitting the screenshots. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/20