J-A15045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                :          PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
SHAWN WINTERS                   :
                                :
            Appellant           :  No. 1634 MDA 2024

Appeal from the Judgment of Sentence Entered October 3, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003424-2023

BEFORE:   BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED: AUGUST 28, 2025**

Shawn Winters appeals from the October 3, 2024 judgment of sentence

of time-served to 23 months' imprisonment, followed by 5 years' probation,

imposed after he was found guilty in a bench trial of receiving stolen property.[1]

After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case, as gleaned

from the trial testimony, as follows:

> Ariana Weyandt testified that she was employed as a
> warehouse manager at Royal Green, LLC, which is a
> scrap yard located in Berks County, Pennsylvania.  On
> August 31, 2023, Ms. Weyandt weighed copper wire
> that was brought to the scrap yard by Appellant.  Ms.
> Weyandt prepared a weigh ticket that was admitted
> into evidence as Commonwealth's Exhibit 1.   Ms.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3925(a).

Weyandt testified that state law required her to obtain identification from the seller, and that the seller was Shawn Michael Winters. A second weigh ticket from September 6, 2023, was also admitted into evidence as Commonwealth's Exhibit 2. Appellant was also identified as the seller of that metal. A picture that was taken of Appellant's driver's license was admitted into evidence as Commonwealth's Exhibit 3.

Ms. Weyandt testified that on September 6, 2023, she was advised that a railroad was searching for stolen wire. Ms. Weyandt took pictures of the wire Appellant sold to the scrap yard that were admitted into evidence as Commonwealth's Exhibits 4-8. The wire Appellant brought to the scrap yard matched the wire that had been taken from the railroad.

Amber Busacco, the controller for Royal Green, LLC, testified that she was contacted in August of 2023 about the theft of copper wire from the railroad. Ms. Busacco was notified to look for anyone who might bring wire to the scrap yard. Ms. Busacco contacted Norfolk Southern Railroad Police about the wire that was sold to the scrap yard. Ms. Busacco also collected video surveillance footage from the days the wire was brought to the scrap yard. Appellant appeared in the video surveillance footage captured on August 31, 2023, and on September 6, 2023. Ms. Busacco also prepared a report that she provided to the police. That report was admitted into evidence as Commonwealth's Exhibit 11.

Jesse Tuckett, a communication and signals supervisor for Norfolk Southern, testified that he called Norfolk Southern Police on August 29, 2023, when he discovered that copper wire was missing from the railroad's storage facility. Mr. Tuckett informed the police that the theft must have occurred between August 15th and August 29th. Mr. Tuckett prepared a report calculating the value of the stolen wire that was admitted into evidence as Commonwealth's Exhibit 13.

The Commonwealth also produced a certified copy of a letter Appellant wrote to the court that the Commonwealth obtained from the Clerk of Courts. In the letter, Appellant admitted to the theft due to his addiction, but disputed the estimated value of the property.

Finally, Special Agent Nathan Sloan of the Norfolk Southern Railroad Police testified that after learning of the theft, he contacted several scrap facilities located within a 10-mile radius and asked them to contact him if anyone brought wire to their facility. Special Agent Sloan responded to Royal Green after they called him. Special Agent Sloan obtained videos, photographs, and a copy of Appellant's identification card from Royal Green during his investigation. Special Agent Sloan also spoke to Appellant on September 7, 2023. During the interview, Appellant admitted that he sold copper wire to Royal Green. Appellant claimed that he obtained the wire from several homes in the City of Reading, but Special Agent Sloan testified that the wire is used exclusively in the railroad industry.

Trial court opinion, 1/7/25 at 3-5 (citations to notes of testimony omitted).

On September 8, 2023, Appellant was charged with one count of receiving stolen property in connection with this incident. Appellant waived his right to a jury and proceeded to a bench trial before the Honorable Eleni Dimitriou Geishauser on July 18, 2024. Following a one-day trial, Appellant was found guilty of the aforementioned offense on July 23, 2024. A hearing was scheduled for August 20, 2024 after it was determined that more information was needed to calculate the value of the stolen copper wire. Following the hearing, the trial court filed an amended verdict slip stating that the value of the stolen copper wire was between $2,000.00 and $100,000.00. Appellant was ultimately sentenced to time-served to 23 months'

- 3 -

imprisonment, followed by 5 years' probation, on October 3, 2024. Appellant did not file any post-sentence motions. This timely appeal followed on October 31, 2024.[2]

Appellant raises the following issues for our review:

I. Whether the trial court erred as a matter of law by not entering a verdict of "not guilty' as the Commonwealth did not present sufficient evidence to support the verdict[?]

II. Whether the trial court erred by allowing the Commonwealth in its case in chief to admit a "**Pro Se** Letter to Judge" allegedly sent to the trial court judge by [Appellant] while he was incarcerated at Berks County Prison[?]

Appellant's brief at 5.

**I.**

Appellant first argues that there was insufficient evidence to sustain his conviction for receiving stolen property because "the Commonwealth did not present any direct evidence that Appellant knew or had reason to know that the [copper wire] was stolen." **Id.** at 9.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that

---

[2] Appellant and the trial court have complied with Pa.R.A.P. 1925.

as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

In order to sustain a conviction for receiving stolen property, the Commonwealth must prove: "(1) the property was stolen; (2) the defendant was in possession of the property; and (3) the defendant knew or had reason to believe the property was stolen." *Commonwealth v. Foreman*, 797 A.2d 1005, 1011 (Pa.Super. 2002) (citation omitted). "[T]he mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen." *Id.* at 1012 (citation omitted).

> Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime.

*Commonwealth v. Robinson*, 128 A.3d 261, 268 (Pa.Super. 2015) (*en banc*) (citations omitted).

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we find that there was ample evidence to establish that Appellant knew or should have known that the copper wire was stolen, sufficient to sustain his conviction for receiving stolen property. As noted, the testimony presented during the bench trial established that Appellant was observed on video surveillance at the Royal Green scrap yard on two different occasions shortly after the theft – August 31 and September 6, 2023 – selling copper wire that is utilized exclusively in the railroad industry. Notes of testimony, 7/18/24 at 10-13, 26-27, 38-40, 62. This wire matched the wire that had been stolen from the railroad. *Id.* at 14. The record further demonstrates that Appellant admitted to Norfolk Southern Special Agent Sloan that he sold the specialized copper wire in question to Royal Green, but claimed he found it in the garbage cans of several homes in the City of Reading, Pennsylvania. *Id.* at 60-62. Additionally, as discussed *infra*, the Commonwealth introduced into evidence a certified copy of a *pro se* letter Appellant wrote to the trial court from prison, wherein he acknowledged selling the wire belonging to the Norfolk Southern Railroad to fund his addiction, but disputed the estimated value of that which was stolen. *Id.* at 56, 93; Commonwealth's Exhibit No. 14. Based on the foregoing, we find that Appellant's sufficiency claim merits no relief.

**II.**

Appellant next argues that the trial court abused its discretion by permitting the Commonwealth to introduce into evidence the aforementioned letter "supposedly written by the Appellant while he was incarcerated at Berks County Prison." Appellant's brief at 11. Appellant contends that this letter was not properly authenticated and should have been "excluded as a compromise offer and/or negotiation." *Id.* at 11-12. For the following reasons, we disagree.

"Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Crosley*, 180 A.3d 761, 768 (Pa.Super. 2018) (citation omitted), *appeal denied*, 195 A.3d 166 (Pa. 2018). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Bullock*, 170 A.3d 1109, 1126 (Pa.Super. 2017) (citation omitted), *appeal denied*, 184 A.3d 944 (Pa. 2018).

For evidence to be admissible, it must be properly authenticated. *See Commonwealth v. Talley*, 236 A.3d 42, 59 (Pa.Super. 2020), *affirmed*, 265 A.3d 485 (Pa. 2021). Pennsylvania Rule of Evidence 901 governs authentication and provides, in relevant part, that "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must

produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). "A document also may be authenticated by circumstantial evidence." *Commonwealth v. Koch*, 39 A.3d 996, 1004 (Pa.Super. 2011) (citation omitted), *affirmed by an equally divided court*, 106 A.3d 705 (Pa. 2014); *see also* Pa.R.E. 901(b)(4).

In *Commonwealth v. Collins*, 957 A.2d 237 (Pa. 2008), our Supreme Court held that a letter authored by a defendant-prisoner was properly authenticated where the letter bore defendant's name and the return address of the prison where he was incarcerated; used defendant's unique prison identification number; and contained subject matter — including the recipient's nickname and trial strategy — clearly indicating that defendant was the author. *Id.* at 265-266.

Although not identical to the evidence in *Collins*, the circumstantial evidence in this matter was more than sufficient, when considered in its totality, to authenticate the letter in question. The letter that was admitted into evidence contained Appellant's name, Jail #2018-2783, and was mailed to the trial court from Unit M-209 of the Berks County Jail at 1287 County Welfare Road in Leesport, Pennsylvania. *See* Commonwealth's Exhibit No. 14. Additionally, the letter was signed by Appellant and referenced specific details of his case. *Id.* Based on the foregoing, we find that circumstantial evidence provided a sufficient basis to authenticate the letter and discern no abuse of discretion on the part of the trial court in admitting it into evidence.

In reaching this conclusion, we further reject Appellant's contention that the letter should have been excluded from evidence because it constituted an offer to compromise and/or a plea negotiation under Pennsylvania Rules of Evidence 408, 409, and 410. **See** Appellant's brief at 12-15. Rules 408 thru 410 govern **Compromise Offers and Negotiations**, **Offers to Pay Medical and Similar Expenses**, and **Pleas, Plea Discussions, and Related Statements**, and are inapplicable to the instant matter. Here, Appellant's **pro se** letter was not an attempt to negotiate a plea or an offer to pay medical expenses, and was not mailed to the Commonwealth — the party with whom he would have been negotiating. Rather, this letter was mailed directly to the trial court judge in an attempt to have the court grant him leniency.

For all the foregoing reasons, we affirm the trial court's October 3, 2024 judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.


_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/28/2025