J-A25017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROBERT UGEAN HARPER | : | No. 243 MDA 2020 |

Appeal from the Order Entered February 6, 2020
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001483-2019

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 01, 2021**

Appellant, the Commonwealth of Pennsylvania (the Commonwealth), appeals from the order entered on February 6, 2020, barring the introduction of unauthenticated text messages and evidence of prior bad acts in a criminal prosecution against Robert Ugean Harper (Harper) for charges related to a drug delivery involving death.[1]  The Commonwealth certified that the order will terminate or substantially handicap the prosecution.[2]  Upon review, we affirm.

---

[1] 18 Pa.C.S.A. §§ 2506(a) (drug delivery involving death); 35 P.S. 780-113(a)(30) (possession with intent to deliver - cocaine); 35 P.S. 780-113(a)(30) (possession with intent to deliver - heroin).

[2] **See** Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice

We briefly summarize the facts and procedural history of this case as follows. On March 7, 2017, Clinton Arnold died from a heroin overdose. On May 13, 2019, the Commonwealth charged Harper with the aforementioned charges in connection with the death. Relevant herein, during the course of the investigation, police obtained the records for the decedent's cellular telephone.[3] Those records revealed a series of text messages to and from a particular cellular telephone number,[4] potentially related to a purported drug transaction the day before Clinton's death. On January 30, 2020, Harper filed a motion *in limine* seeking to "prohibit[] the Commonwealth from introducing any evidence at trial regarding text messages to or from [the transaction telephone], including the content of those messages, as the Commonwealth [could not] authenticate [that Harper authored or received] those texts [as] required by Pa.R.E. 901(a)." Motion *in Limine*, 1/30/2020, at ¶1. Harper also requested that the trial court preclude the Commonwealth from presenting

_____

of appeal that the order will terminate or substantially handicap the prosecution.")

[3] Throughout this memorandum, we shall refer to the decedent's cellular telephone as "the decedent's telephone" or "the decedent's cellular telephone."

[4] Throughout this memorandum, we shall refer to the cellular telephone that exchanged text messages with the decedent's telephone as "the transaction telephone" or "the transaction cellular telephone."

evidence of Harper's prior narcotics conviction,[5] arguing such evidence did not qualify as prior bad act evidence admissible under Pa.R.E. 404(b). *Id.* at ¶7.

The trial court held a hearing on the motion *in limine* on February 3, 2020. At that hearing, the Commonwealth entered into evidence the notes of testimony from the preliminary hearing before Jonathon R. Birbeck, Magisterial District Judge of Cumberland County, held on May 29, 2019.[6] The Commonwealth did not present additional evidence. A brief summary of the pertinent facts, the parties' arguments, and trial court's rulings on the issues is warranted.

At the evidentiary hearing on February 3, 2020, the Commonwealth offered the following evidence to establish that Harper authored or received certain text messages exchanged between the transaction telephone number and the decedent's telephone. First, the subscriber information for the transaction telephone listed "Billy Bob" as the subscriber. Next, the investigating officer identified Harper, by voice, as the individual who engaged in two telephone calls to a prison inmate from the transaction telephone,

---

[5] Harper was convicted of possession with intent to deliver heroin in a prior matter, wherein police set up a controlled narcotics purchase. Clinton Arnold, the decedent herein, served as a confidential informant (CI) for the police in that matter.

[6] The Commonwealth presented the testimony of two witnesses at the preliminary hearing – Michael Hamilton, the last person to see the victim alive (and who subsequently discovered his body) and the investigating officer, Detective Matthew M. Johnston.

following Arnold's death. The Commonwealth also argued GPS and cellular tower information showed that the transaction telephone subsequently travelled outside the Commonwealth and aligned with Harper's purported movement. The Commonwealth further argued that, in the prior criminal matter noted above,[7] police arrested Harper, he posted bond, and he subsequently communicated by text message with his bondsman *via* the transaction cellular telephone. N.T., 3/3/2020, at 12-13. The Commonwealth argued that the text messages with the bondsman authenticated the text messages with the decedent. ***Id.*** at 13.

Ultimately, regarding authentication of the subject text messages, the trial court stated:

> [it was] satisfied that the [transaction cellular telephone] belonged to [Harper]. [The trial court was further] satisfied that [Harper], through circumstantial evidence, can be connected to the [tele]phone at times before and after March 6, 2017. But, based upon [established precedent, the trial court could not] find that there [was] sufficient [authenticating] evidence that the text messages [relevant to the instant case that were] received [by] or sent from [the transaction telephone] were sent or received by [Harper.]

N.T., 3/3/2020, at 10. Hence, the trial court concluded that the Commonwealth failed to present any authentication evidence showing Harper authored or received the text messages allegedly exchanged with the decedent. ***Id.*** at 14-15.

---

[7] This aspect of the Commonwealth's argument intertwines with its contention that the prior conviction should be admitted under the prior bad act exception to Rule 404(b).

In its subsequent Rule 1925(a) opinion, the trial court further clarified:

Here, the Commonwealth rested on the testimony and text messages presented at the preliminary hearing. After thoroughly examining both the transcript and the packet of text messages, [the trial court was] satisfied that the Commonwealth could not corroborate the identity of the sender/receiver associated with the [transaction telephone number].

The transcript of the preliminary hearing is 80 pages in length. Within those pages, [the trial court] did not find one modicum of evidence tending to corroborate that [Harper] sent or received the supposed drug-related text messages [from] March 6th and 7th. The Commonwealth [] offered the testimony of Mr. Hamilton, in an attempt to connect [Harper] with those texts. Mr. Hamilton claimed that he and the decedent planned to purchase crack cocaine [on the dates in question]. The decedent's telephone had several text messages to and from the [transaction telephone]. Mr. Hamilton drove the decedent to pick up the crack [cocaine]. He parked at a car wash [near Harper's residence at the time] at which point the decedent exited the vehicle. [Mr. Hamilton] did not see the decedent go into any particular residence. The decedent returned twenty (20) minutes later. Mr. Hamilton did not see the decedent with any crack [cocaine] or heroin. Furthermore, [Mr. Hamilton] did not see [Harper later] that night.

\*          \*          \*

The Commonwealth did not even present evidence that [Harper] owned the [transaction cellular telephone]. At most, it was able to show that [Harper] used the [transaction telephone] at various points in time ***after*** the date in question. Proof of subsequent use [was] not sufficient to establish that [Harper] was an active correspondent in the particular drug-related text messages.

Nor was the Commonwealth able to satisfy the authentication requirements under the Rules of Evidence. It did not offer first-hand corroborating testimony from either the author or sender. Nor did its circumstantial evidence connecting the [transaction telephone number] to [Harper] have any distinctive characteristics. The only evidence was that [Harper] lived [near the alleged drug transaction] and that he used the [transaction telephone] at various times after the dates in question. There was no evidence specifying the author/sender of the texts[], nor any

other aspects of the communications that signify them to be from [Harper]. Ultimately, [the trial court] found that the Commonwealth failed to establish, either by direct or circumstantial evidence, that [Harper] was the author or recipient of the drug related texts.

Trial Court Opinion, 5/3/2020, at 2-5 (footnotes and citations omitted; emphasis in original).

Regarding Harper's prior narcotics conviction, the Commonwealth sought to present the prior bad act evidence pursuant to Pa.R.E. 404(b). The Commonwealth argued:

> The evidence [] would be limited to establish the [] relationship between [Harper] and Clinton Arnold. The evidence would be from Trooper Douglas Rost, who was the affiant [in] the underlying past criminal case. Trooper Rost would just testify that Clinton Arnold acted as a CI and did a controlled purchase of heroin from [Harper.]

N.T., 3/3/2020, at 12.

On this issue, the trial court determined:

> The fact that [Harper] was arrested for a prior drug delivery [] doesn't [] offer anything in this case other than the fact that he knew the decedent.
>
> *          *          *
>
> The fact that [the decedent] bought drugs from [Harper] as a confidential informant and that [Harper] was charged with that before this delivery took place doesn't offer anything. Anything that it does offer is way more prejudicial, unfairly prejudicial, than probative. [I]t doesn't shed light on whether or not [Harper] delivered the drugs in question on the night in question, the fact that he delivered them some other time.

*Id.* at 13-14.

The Commonwealth objected to both rulings, arguing the decisions substantially handicapped the prosecution. Moreover, the Commonwealth indicated its intent to appeal both rulings. *Id.* at 10-14.

On February 6, 2020, "for the reasons stated on the record[,]" the trial court entered an order "preclud[ing] the admission of text messages to and from the [transaction telephone number.]" Trial Court Order, 2/6/2020, at 1. The order, however, did not address the trial court's decision to preclude Harper's prior conviction under Rule 404(b).[8] This timely appeal resulted.[9]

_____

[8] Despite the trial court's failure to reference the Rule 404(b) issue in the order denying relief or in its subsequent opinion pursuant to Pa.R.A.P. 1925(a), the trial court squarely addressed, and ruled on, the issue at the hearing on Harper's motion *in limine* as detailed above. The Commonwealth certified that the ruling on the Rule 404(b) issue substantially hampered the prosecution. While a trial court opinion on the issue would have been preferred and beneficial to appellate review, because the trial court's reasons appear on the record our review is not hampered. *See Commonwealth v. Hood*, 872 A.2d 175, 178 (Pa. Super. 2005), *citing* Pa.R.A.P. 1925(a) ("The Rules of Appellate Procedure make the filing of a [Rule] 1925(a) opinion mandatory and the Rule 1925(a) opinion must set forth the reasons for the rulings of the trial judge or must specify in writing the place in the record where the reasons may be found."); *see also Commonwealth v. Widger*,-- A.3d --, 2020 PA Super 192, at *5 n.5 (Pa. Super. August 13, 2020) ("Although we do not approve of or sanction the trial court's failure to comply with its obligations under Rule 1925(a), the lack of a Rule 1925(a) opinion does not preclude this Court's review of the merits of Appellant's issues based upon our review of the record, including the notes of testimony[.]").

[9] On February 7, 2020, the Commonwealth filed a notice of appeal with Rule 311(d) certification. The trial court did not order the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 13, 2020.

On appeal, the Commonwealth presents the following issues[10] for our review:

I. Whether the [trial] court abused its discretion in granting [Harper's] motion *in limine*, which precluded the admission at trial of text communications after finding the Commonwealth failed to authenticate the communications as being authored and/or received by [Harper]?

II. Whether the [trial] court abused its discretion in denying[,] as irrelevant and also more prejudicial than probative, the admission at trial [of] the Commonwealth's proffered Rule 404(b) evidence of prior drug sales by [Harper] to [the] decedent?

Commonwealth's Brief at 4.

Both of the Commonwealth's issues challenge trial court evidentiary rulings. We adhere to the following standard:

The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment [but is established only where] the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Williams***, -- A.3d --, 2020 WL 5950934 at *3 (Pa. Super. Oct. 8, 2020) (citation omitted).

In the first issue we examine, the Commonwealth argues that "the trial court's decision to exclude [] text messages based upon lack of authentication focused exclusively on proof of authorship and to a [much higher] standard []

---

[10] We have reordered the issues for clarity and ease of discussion.

than [] required by the Rules of Evidence" and established case law. Commonwealth's Brief at 21. The Commonwealth asserts that its presentation of the following evidence was sufficient to authenticate the subject text messages:

- [The decedent] and Harper were known associates and, in particular, Harper was a law enforcement confirmed source of heroin for [the decedent].

- Although undoubtedly a fake name, the subscriber information for [the transaction telephone number] was "Billy Bob" and Billy can be a nickname for the given name Robert.

- Hamilton drove [the decedent] to a car wash located close to Harper's residence [] and, although Hamilton remained in the vehicle and did not see the drugs immediately, he testified the only other place the pair went before returning to his residence to ingest cocaine was a gas station, where [the decedent] went inside for "a few minutes" to purchase pipes to smoke.

- The communications between [the decedent] and [the transaction telephone number] demonstrate a familiarity between the communicating parties.

- In the months of March and April 2017, an inmate in the Cumberland County Prison made calls to [the transaction telephone number] and the person who answered those calls and communicated with the inmate is Harper - identified by both voice and context of the discussions in the calls and verified with independent information (*i.e.* court dockets, orders).

- GPS and cell tower information show [the transaction telephone] traveled between Carlisle[, Pennsylvania] and Elizabeth City, [North Carolina] during the period Harper was out on bond/on the run from March through November 2017 and Harper told Detective Johnston that's where he was during that time (albeit denying returning to Carlisle for the drug deal at issue) with his family.

- On July 15, 2017, James Fabie received a text message from [the transaction telephone] that identified the writer as "Robert Harper"; the message explained the reason for Harper absconding. Mr. Fabie was Harper's bondsman and the content of the message is consistent with events and people in Harper's life.

*Id.* at 21-23 (record citations omitted).

This Court has previously determined:

Pursuant to Pennsylvania Rule of Evidence 901, authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. *See* Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. *See* Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). *See* Pa.R.E. 901(b)(4).

*Commonwealth v. Talley*, 236 A.3d 42, 59 (Pa. Super. 2020).

This Court has examined the law pertaining to the authenticity of text

messages:

The admissibility of electronic communications is to be evaluated on a case-by-case basis as any other document to determine whether or not there has been an adequate foundational showing of their relevance and authenticity. *In the Interest of F.P.*, 878 A.2d 91, 96 (Pa. Super. 2005).

In *Commonwealth v. Koch*, 39 A.3d 996 (Pa. Super. 2011), as a matter of first impression, our Court examined: 1) the law pertaining to authentication of text messages and, 2) whether text messages constitute hearsay subject to exception. The *Koch* Court determined:

Pennsylvania Rule of Evidence 901 provides that authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient.

Pa.R.E. 901(b)(1)[11]; **see also** Pa.R.E. 901(b)(1) cmt., *citing* **Commonwealth v. Hudson**, 414 A.2d 1381 (Pa. 1980). Furthermore, electronic writings typically show their source, so they can be authenticated by contents in the same way that a communication by postal mail can be authenticated. Circumstantial evidence may suffice where the circumstances support a finding that the writing is genuine. **In the Interest of F.P., a Minor**, 878 A.2d 91 (Pa. Super. 2005).

* * *

Importantly, in **In the Interest of F.P., a Minor**, **supra**, we rejected the argument that e-mails or text messages are inherently unreliable due to their relative anonymity and the difficulty in connecting them to their author. **Id.** at 95. We reasoned that the same uncertainties existed with written documents:  "A signature can be forged; a letter can be typed on another's typewriter; distinct letterhead stationary can be copied or stolen." **Id.**  Concluding that electronic communications, such as e-mail and instant messages, can be authenticated within the framework of Pa.R.E. 901 and our case law, we declined to create new rules governing the admissibility of such evidence. We held that such evidence is to be evaluated on a case-by-case basis as any other document to determine whether there has been an adequate foundational showing of its relevance and authenticity.

* * *

[...E]-mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally.  A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document, acknowledgment of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting. **See McCormick on Evidence**, §§ 219–221 (E. Cleary 2d Ed. 1972).  A

---

[11] We note that effective October 1, 2020, a new provision of the Pennsylvania Rules of Evidence, Pa.R.E. 901(b)(11) (governing authentication or identification of digital evidence) took effect. **See Talley**, 236 A.3d at 59 n.12.  This provision is not applicable instantly.

- 11 -

document also may be authenticated by circumstantial evidence, a practice which is "uniformly recognized as permissible." *Commonwealth v. Brooks*, 508 A.2d 316 (Pa. Super. 1986) (*citing*, *e.g.*, *Commonwealth v. Nolly*, 138 A. 836 (Pa. 1927) (letters authenticated by contents: facts known only to sender and recipient); *Commonwealth v. Bassi*, 130 A. 311 (Pa. 1925) (unsigned letter authenticated by defendant's nickname written on it, along with contents indicating knowledge of matters familiar to both defendant-sender and witness-recipient); and *McFarland v. McFarland*, 107 A.2d 615, 616 (Pa. Super. 1954)).

As these cases illustrate, the difficulty that frequently arises in e-mail and text message cases is establishing authorship. Often more than one person uses an e-mail address and accounts can be accessed without permission. In the majority of courts to have considered the question, the mere fact that an e-mail bears a particular e-mail address is inadequate to authenticate the identity of the author; typically, courts demand additional evidence.

Text messages are somewhat different in that they are intrinsic to the cell[ular] [tele]phones in which they are stored. While e-mails and instant messages can be sent and received from any computer or smart phone, text messages are sent from the cellular phone bearing the telephone number identified in the text message and received on a phone associated with the number to which they are transmitted. The identifying information is contained in the text message on the cellular telephone. However, as with e-mail accounts, cellular telephones are not always exclusively used by the person to whom the [tele]phone number is assigned.

*Commonwealth v. Koch*, 39 A.3d 996, 1002–1005 (Pa. Super. 2011).

Moreover, this Court has recognized:

Pennsylvania Rule of Evidence 801 defines hearsay as follows:

(a) Statement. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.

- 12 -

(b) Declarant. A "declarant" is a person who makes a statement.

(c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Pa.R.E. 801. Additionally, Pa.R.E. 802 provides: "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

Arguably, [ ] text messages could [be] admitted under the exception to the Pennsylvania hearsay rule for admissions of a party opponent. *See* Pa.R.E. 803(25). However, [in order to constitute] party admissions [ ] the Commonwealth [must] prove [ ] author[ship].

*Id.* at 1006.

*Williams*, 2020 WL 5950934 at * 4-6.

In *Koch*, citing decisions from other jurisdictions and various Pennsylvania Rules of Court, we noted two general ways to authenticate text messages. First, as briefly mentioned above, "by direct proof," *i.e.*, "testimony [] from persons who sent or received the text messages." *Koch*, 39 A.3d at 1004-1005. Second, the *Koch* Court recognized that authentication of text messages may be accomplished by presenting evidence of "contextual clues in the [] text messages themselves tending to reveal the identity of the sender." *Id.* at 1005; *see also id.* at 1004, *citing* *State v. Thompson*, 777 N.W.2d 617, 624–627 (N.D. 2010) (wherein the Supreme Court of North Dakota conducted extensive review of other jurisdictions' authenticity requirements for electronic communications to conclude there must be evidence that e-mails, instant messages, or text messages

- 13 -

themselves contain factual information or references unique to the parties involved to properly authenticate).

> Moreover, following **Koch**, this Court determined:
>
> The proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding **that a particular person or entity was the author**. **See** Pa.R.E. 901(a).
>
> Direct evidence under Pa.R.E. 901(b)(11)(A) may also include an admission by a party-opponent.
>
> Circumstantial evidence of identifying content under Pa.R.E. 901(b)(11)(B)(i) may include self-identification or other distinctive characteristics, including a display of knowledge only possessed by the author. Circumstantial evidence of content may be sufficient to connect the digital evidence to its author.
>
> **Circumstantial evidence of ownership, possession, control, or access to a device or account alone is insufficient for authentication of authorship of digital evidence** under Pa.R.E. 901(b)(11)(B)(ii). **See**, **e.g.**, **Commonwealth v. Mangel**, 181 A.3d 1154, 1163 (Pa. Super. 2018) (social media account bearing defendant's name, hometown, and high school was insufficient to authenticate the online and mobile device chat messages as having been authored by defendant). However, this evidence is probative in combination **with other evidence of the author's identity**.
>
> Expert testimony may also be used for authentication purposes. **See**, **e.g.**, **Commonwealth v. Manivannan**, 186 A.3d 472 (Pa. Super. 2018).

**Talley**, 236 A.3d at 60.

Here, as the Commonwealth concedes, there was no direct proof that Harper authored or received the text messages sent to and from the transaction telephone number. In examining the authentication evidence the Commonwealth presented, as set forth above, we conclude that the Commonwealth failed to establish that Harper either authored or received the

- 14 -

proffered text messages. While Billy or Bob could certainly be a nickname for Robert, as the Commonwealth suggests, the Commonwealth simply did not present any evidence linking Harper to "Billy Bob." Furthermore, although the subsequent prison calls, GPS data and cellular telephone records, and text message to Harper's bail bondsman circumstantially show that Harper may have had access to the transaction telephone at those times, there was no evidence, direct or circumstantial, Harper authored or received the text messages at issue in the instant case.[12] As this Court has previously noted,

_____

[12] Here, the concurring and dissenting memorandum (CDM) concedes that the text messages at issue "are largely silent as to authorship" but then argues that they "all involve the same unique telephone number." Concurring and Dissenting Memorandum, at 3. More specifically, the CDM determines that "Harper's contemporaneous ownership and use of this telephone number[,]" coincided with evidence that "tied the phone number to the geographic areas of Harper's former residence[,] the purported narcotics deal, [and] Harper's interstate movements." *Id.* at 5. However, mere ownership, possession, control, and access to a cellular telephone are insufficient to establish authentication, *i.e.* authorship or receipt of a particular communication. Additionally, the CDM also points to evidence that the decedent and Harper were previously acquainted from the prior drug transaction wherein the decedent participated as a confidential informant. *Id.* at 4. Furthermore, the CDM claims that "there was also testimony establishing that the decedent asserted that he purchased his heroin from an individual named 'Rob.'" *Id.* Again, past dealings between parties do not authenticate the text messages at issue. Even if Harper used, or had access to, the transaction cellular telephone at various points before and after the text messages at issue, such evidence is not sufficient to support a finding that Harper was an author or recipient of the particular exchanges relevant herein.

Moreover, we reject the CDM's attempt to distinguish **Koch** because that case dealt with the explicit joint use of the cellular telephone, as well as the suggestion that "the only competent evidence of record bespeaks Harper's ownership and use of the at-issue telephone number." **See id.** at 3-4 n.1.

- 15 -

a single person does not always use a cellular telephone exclusively. Thus, circumstantial evidence that Harper may have used the cellular telephone at other times was insufficient to establish authorship of the proffered text messages. Moreover, the Commonwealth failed to present any contextual evidence from the text messages themselves, *i.e.*, unique references between the parties or responsive action upon receipt of a communication, in order to authenticate authorship as required.[13] Accordingly, the Commonwealth failed to make an adequate foundational showing of the authenticity of the text messages and we discern no abuse of discretion or error of law in precluding them for lack of authenticity.

_____

Here, as set forth above, the Commonwealth only presented evidence that the cellular telephone was registered to "Billy Bob." There was no evidence that specifically connected Harper to the name "Billy Bob." Thus, evidence of cellular telephone ownership in this matter was tenuous at best and still woefully short for authentication purposes. Finally, even though it was conceded that there was joint access to the cellular telephone in **Koch**, the basic tenet that cellular telephones are not always exclusively used by the person to whom the telephone number is assigned remains the same. Finally, there was no evidence that the cellular telephone was in Harper's exclusive control.

[13] In the CDM, the author notes that the text messages at issue reference the terms "hard" and "dog food" as "slang for crack cocaine and heroin, respectively." Concurring and Dissenting Memorandum, at 2-3. However, these terms are "**common** street slang." *See* N.T. Preliminary Hearing, 5/29/2019, at 39 ("Hard can represent crack cocaine because of the base that [] comes in a rock form. Dog food for heroin as it may come in a brownish tint powder.") (emphasis added). Accordingly, the text messages at issue contained neither unique references to the parties involved nor a display of knowledge only possessed by a unique author or recipient.

Next, the Commonwealth contends that "[because the] proffered Rule 404(b) evidence is relevant, has permissible uses provided by the Pennsylvania Rules of Evidence 404(b) and is vital to the Commonwealth's case, the [trial] court abused its discretion when it denied the admissibility of the evidence at trial." Commonwealth's Brief at 12. The Commonwealth argues, in sum:

> The primary fact in dispute in this case is who delivered the cocaine and the heroin to [the victim] on March 6th: [The victim] is deceased, there were no (known) eyewitnesses to the transaction or admissions by Harper, and Harper denies any connection to the [transaction telephone] or the communications between [the decedent's telephone] and [the transaction telephone regarding arrangements] for the purchase of the crack cocaine ("hard") and heroin ("dog food"). The sum of the Commonwealth's other evidence is the circumstantial evidence connecting Harper to [the transaction telephone]. As such, the 404(b) evidence is essential to establishing the existence of a prior relationship between [the decedent] and Harper, the nature of that relationship and law enforcement knowledge of that relationship prior to the March 6th drug deal, and Harper's intent and common scheme in dealing to [the decedent]. [The] 404(b) evidence is highly relevant to proving an otherwise circumstantial case because it makes a fact at issue - Harper as the dealer - more likely than it is without the evidence. Additionally, the fact of that prior criminal case also goes to Harper's opportunity to sell the cocaine and heroin to Arnold on March 6, 2017: he had been released on bail from custody on the prior charges just prior to March 6th. Lastly, the fact of that prior case substantiates that [the transaction telephone number] was Harper's number based upon the communications to/from that [tele]phone that match with the events and people involved in Harper's case.
>
> Further, the probative value of this evidence cannot be understated when looking at the totality of the Commonwealth's wholly circumstantial case, the strength of the proffered evidence and in light of the availability of a cautionary instruction to ensure the jurors will consider the evidence only for its intended purpose.

- 17 -

*Id.* at 16-17 (case citations omitted).

Pennsylvania Rule of Evidence 404(b), entitled "Other crimes, wrongs, or acts," provides in relevant part as follows:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b)(1)-(3).

An *en banc* panel of this Court has stated:

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts.

*Commonwealth v. Ross*, 57 A.3d 85, 98-99 (Pa. Super. 2012) (*en banc*)

(internal citations omitted).

Moreover, we have stated:

> The purpose of Rule 404(b)(1) is to prohibit the admission of evidence of prior bad acts to prove "the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). While Rule 404(b)(1) gives way to recognized exceptions, the exceptions cannot be stretched in ways that effectively eradicate the rule. With a modicum of effort, in most cases it is possible to note some similarities between the accused's prior bad conduct and that alleged in a current case. To preserve the purpose of Rule 404(b)(1), more must be required to establish an exception to the rule - namely a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question. […T]his Court has warned that prior bad acts may not be admitted for the purpose of inviting the jury to conclude that the defendant is a person "of unsavory character" and thus inclined to have committed the crimes with which he/she is charged.

*Id.* at 104–105 (citations omitted).

Here, the Commonwealth admits that the evidence in this case is "wholly circumstantial" and that it sought to admit the proffered 404(b) evidence of a prior narcotic sale between Harper and the decedent "to establish[] the existence of a prior relationship[.]" The Commonwealth must prove beyond a reasonable doubt that Harper committed the particular crimes of which he was accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts. Prior bad acts may not be admitted for the purpose of inviting the factfinder to conclude that a person is of unsavory character and, therefore, inclined to commit the charged offense. Here, in the absence of evidence connecting Harper and the decedent during the episode in question, the Commonwealth's proffered prior act evidence would invite the factfinder to assume Harper acted in conformity with past criminal conduct or had a general propensity for crime. Moreover, the trial

court weighed the probative value of the proffered evidence, as required, and determined that it was unfairly prejudicial to Harper. Based upon our standard of review, we discern no trial court abuse of discretion or error of law in precluding evidence of Harper's prior conviction for heroin delivery at trial in this matter.

Order affirmed.

Judge King joins.

Judge Bowes files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/01/2021