J-A03026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| COMONITI THOMAS | : | |
| | : | |
| Appellant | : | No. 196 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 20, 2010
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010048-2008

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED JUNE 9, 2025**

Comoniti Thomas appeals from the judgment of sentence for his convictions for two counts of first-degree murder, and one count each of attempted murder, robbery, and possessing an instrument of crime ("PIC").[1] Thomas challenges the sufficiency and weight of the evidence, the admission of evidence, and the court's denials of his request for a cautionary instruction and motion for a mistrial. We affirm.

This appeal is from the judgment of sentence entered in 2010 following Thomas's second jury trial.[2] The first trial resulted in a mistrial. The Commonwealth initially charged Thomas with the above-referenced offenses as well as possession of a controlled substance with intent to deliver and

---

[1] 18 Pa.C.S.A. §§ 2502(a), 901(a) (of 2502), 3701(a)(1)(i), and 907(a), respectively.

[2] The Honorable Judge Steven R. Geroff presided over both trials.

knowing and intentional possession of a controlled substance for crack cocaine recovered from Thomas on the day of the murders. *See* Criminal Complaint, Docket No. MC-51-CR-0024923-2008. However, at his second trial, the Commonwealth proceeded solely with the murder, PIC, and robbery charges. The trial court aptly summarized the facts as follows:

> [I]n the early morning hours of April 13, 2006, [Thomas] killed Vincent Thomas [("Vincent")] and Lateisha Barber, and attempted to kill Brian Ruffin. At trial, the prosecution presented the testimony of Brian Ruffin who told the jury that on the morning of April 13th he awoke to find Vincent [] bleeding from stab wounds inflicted by [Thomas] and calling for help. At that time, [Thomas] pulled Ruffin into the bathroom and shot him several times. When [Thomas] left, Mr. Ruffin got up and found his girlfriend Ms. Barber shot in the bedroom closet. Mr. Ruffin heard [Thomas] come back into the laundry room, so he got a gun from the bedroom and went to the laundry room and shot at [Thomas] about ten times. Mr. Ruffin then ran away, tossed his gun in a trash can, and called 911 from a neighbor's house. When police arrived, both Mr. Ruffin and [Thomas] were wounded, [Vincent] was dead, and Lateisha Barber had a pulse but later died from her injuries. Ballistic evidence was introduced proving the gun found near [Thomas] was the gun used in the killing of [Vincent] and Lateisha Barber. DNA evidence proved that [Vincent's] blood was on two nearby knives, the gun found near [Thomas], and [Thomas's] jeans.

Rule 1925(a) Opinion, filed 5/1/23, at 5. During their treatment of Thomas at the scene, paramedics recovered cocaine from Thomas's underwear. *See* N.T., 10/28/10, at 115-23, 133-34.

The trial court sentenced Thomas to life imprisonment without parole. This Court affirmed the judgment of sentence in 2012. *See Commonwealth v. Thomas*, No. 1048 EDA 2011, 62 A.3d 464 (Table) (Pa.Super. filed Oct.

25, 2012) (unpublished mem.). Thomas was unsuccessful in seeking Post Conviction Relief Act relief. *See Commonwealth v. Thomas*, No. 8 EDA 2018, 2019 WL 1293241, at *5 (Pa.Super. filed Mar. 19, 2019) (unpublished mem.).

In September 2020, Thomas filed a petition for *habeas corpus* with the United States District Court for the Eastern District of Pennsylvania *See Thomas v. Tice*, No. 20-CV-4428, 2022 WL 3913546, at *1 (E.D. Pa. filed Aug. 29, 2022) (Order). The Court granted Thomas's petition in part and reinstated his direct appeal rights. Following the grant of Thomas's *habeas* petition, the case was reassigned to the Honorable Judge Scott O'Keefe who appointed counsel for Thomas and authored the Rule 1925(a) opinion before this Court. *See* Order for Reassignment of Case, filed 3/14/23. This timely appeal followed.

Thomas raises the following issues:

> 1. Whether the evidence was legally insufficient to establish the underlying crimes where the blood DNA evidence used to identify [Thomas] had been contaminated by police, and, this fact had been intentionally suppressed by the prosecutor in violation of *Brady v. Maryland*, 373 U.S. 83 (1983), and further improperly used by her to corroborate the testimony of the corrupt source witness Ruffin by knowingly and falsely representing to the jury that Ruffin had no blood DNA of the victim's on him when she knew that Ruffin's clothing had never been tested for blood DNA evidence?

> 2. Whether the trial court erred in permitting the admission of a "rap video" and the use of a nickname "C Murder" as overly prejudicial and not used for the alleged purpose of proving "motive" but rather as proof of "specific intent" to murder?

3. Whether the trial court abused its discretion by refusing to grant a mistrial when the prosecutor intentionally elicited prejudicial testimony that [Thomas] had been arrested for a narcotics possession charge which the Commonwealth had withdrawn which was unduly prejudicial to [Thomas] and was exploited by the prosecutor?

4. Whether the trial court abused its discretion for refusing to give a cautionary instruction when the prosecution intentionally introduced evidence of the arrest for narcotics?

5. Whether, in the alternative, if the evidence is deemed sufficient to establish the underlying crimes even if wrongly admitted, whether the fact finder's verdict was so contrary to the weight of evidence as to shock one's sense of justice and thereby mandate the granting of a new trial?

Thomas's Br. at 11-12 (suggested answers omitted).

Thomas argues that "the evidence submitted was insufficient to prove the element of identification of [Thomas] as the doer" for each of his convictions and "it is Ruffin who is the logical suspect for the murders[.]" *Id.* at 31, 34. He maintains that the DNA evidence was insufficient to prove identification. *See id.* at 40. Thomas contends that testimony regarding the location of the blood of Vincent, one of the murder victims, on Thomas's clothes "does not rationally comport with how Ruffin describes the murders taking place." *Id.* at 39. Thomas maintains that according to Ruffin's testimony, Vincent's blood would have been on the front of Thomas's clothes. However, Thomas claims the evidence shows that Vincent's blood was found on the back of Thomas's pants leg.

Thomas also claims that "the absence of blood DNA testing on Ruffin's clothing was material to determining his credibility" and "an exculpatory and impeaching fact which should have been revealed to the defense" under

- 4 -

***Brady***. ***Id.*** at 38. He notes that during the prosecutor's closing argument, she stated that "Brian Ruffin didn't have anyone's blood on him." ***Id.*** Thomas maintains that the prosecutor's failure to disclose to the jury that Ruffin's clothes were not tested for DNA amounts to suppression of the evidence and claims "no rational juror learning of those actual true 'facts' would have found the DNA blood evidence sufficient to identify [Thomas] as the killer." ***Id.*** at 39.

Thomas's challenges to the sufficiency of the evidence for his convictions for PIC and robbery, as well as his ***Brady*** claim, are waived due to Thomas's failure to raise them in his Rule 1925(b) statement. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived"). Thomas's Rule 1925(b) statement raised the issue of the sufficiency of the evidence for his first-degree murder and attempted murder convictions, with no mention of PIC, robbery, or ***Brady***. ***See*** Pa.R.A.P. 1925(b) Statement, filed 3/13/23, at ¶ 2. Therefore, we limit our review to the sufficiency of the evidence for Thomas's first-degree murder and attempted murder convictions.

Our standard of review for challenges to the sufficiency of the evidence "is *de novo* and our scope of review is plenary." ***Commonwealth v. Murray***, 83 A.3d 137, 151 (Pa. 2013). When reviewing such a claim,

> we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence

> may be entirely circumstantial as long as it links the accused
> to the crime beyond a reasonable doubt.

*Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa.Super. 2022) (internal citations omitted). The factfinder "is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa.Super. 2017).

To sustain a conviction for first-degree murder, the Commonwealth must prove beyond a reasonable doubt that "(1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill." *Commonwealth v. Williams*, 176 A.3d 298, 306-07 (Pa.Super. 2017).

"A person commits an attempt when with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S.A. § 901(a). To sustain a conviction for attempted murder, the Commonwealth "must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal." *Commonwealth v. Robertson*, 874 A.2d 1200, 1207 (Pa.Super. 2005).

Here, the trial court rejected Thomas's sufficiency claim. Upon review of the evidence, the trial court noted Ruffin's testimony identifying Thomas as the person who shot him.

> Ruffin testified that on the night of April 12th into the morning of the 13th, he was at the Ferndale duplex with Latiesha, [Thomas], Vincent and Bird (Peter Taylor). Vincent and Bird left to go to West Philly. [Thomas] was in the living room, and Latiesha and Ruffin in the bedroom. (N.T. 10-27-2010, pp. 110-116). Vincent returned alone about two in the morning. Eventually everyone went to sleep. Ruffin

woke to [Thomas] grabbing him by the arm and pulling him along. While being pulled, Ruffin saw Vincent by the couch, screaming for someone to call an ambulance. [Thomas] pulled Ruffin into the bathroom, pointed a gun at him and shot Ruffin in the chest. Ruffin fell to the ground and then heard a couple more shots before [Thomas] left the bathroom. Ruffin lost consciousness for a few moments, woke and after not hearing anything, he tried to get off the floor. He saw Vincent laying on the hallway floor, went to the bedroom and found Lateisha wrapped in a blanket in the closet, dead. Ruffin heard the laundry screen door slam, grabbed a gun and found [Thomas] in the laundry room putting drugs and money into a bag. Ruffin started shooting at [Thomas] who shot back at Ruffin. Although shot, Ruffin made it out the front door, gun in hand and started banging on neighbors' doors until a man opened the door at 10036, where Ruffin ran past him to the phone and called 911. (N.T. 10-27-2010, pp. 110-125). Mr. Ruffin admitted his first statement to the police was not correct as he felt he would take care of [Thomas] himself. (N.T. 10-27-2010, pp. 137-138).

Rule 1925(a) Op. at 8-9. The court also pointed out the testimony of the officer who found Thomas at the scene in "the laundry room . . . on his back, also covered in blood and screaming for help. (N.T. 10-27-2010, pp. 44-47)." **Id.** at 7. The officer saw "three handguns within [Thomas's] reach, a backpack on his leg and pouches of white powder everywhere. (N.T. 10-27-2010, pp. 46-47)." **Id.** at 7-8. The Commonwealth presented evidence that the bullets recovered from both murder victim's bodies matched one of the handguns with Thomas's DNA on it. N.T., 10/29/10, at 95-96; N.T., 11/1/10, at 114-16.

Viewing the evidence in the light most favorable to the Commonwealth, we find that it was sufficient, even without the blood evidence. Ruffin testified that Thomas shot him multiple times. Furthermore, firearms evidence established that the bullets recovered from the murder victims matched a

firearm recovered from the scene with Thomas's DNA on it. The Commonwealth proved beyond a reasonable doubt that Thomas took a substantial step toward killing Ruffin and that he was responsible for the deaths of Barber and Vincent. Furthermore, Thomas's argument comparing Ruffin's testimony to the location of Vincent's blood on Thomas's clothing goes to the weight of the evidence, not its sufficiency.

Next, Thomas argues that the court erred in allowing the Commonwealth to play a rap video, where Thomas identified himself as "C-Murder." Thomas's Br. at 41. He claims that the Commonwealth maintained that when Thomas identified himself as C-Murder, he was "confessing" to being the killer. *Id.* He alleges the court should have given a cautionary instruction to correct the prosecutor's closing argument that by using that name, Thomas was identifying himself as the murderer.

Thomas also claims the video was not probative of any material fact related to the charges. He notes that the video shows the sale of drugs from the apartment, which was irrelevant since the Commonwealth did not proceed on any drug charges. Additionally, Thomas claims that the court abused its discretion in "fail[ing] to recognize that the prosecutor, in violation [of the] order to play all of the rap videos, including Ruffin's and playing only [Thomas's] rap video was unduly prejudicial as it was taken out of context." *Id.*

"[D]ecisions on admissibility [of evidence] are within the sound discretion of the trial court and will not be overturned absent an abuse of

discretion or misapplication of law." **Commonwealth v. Talley**, 236 A.3d 42, 55 (Pa.Super. 2020) (citation omitted). An abuse of discretion occurs when the trial court misapplies or overrides the law, exercises its judgment in a manifestly unreasonable manner, or its judgment is "the result of partiality, prejudice, bias[,] or ill-will, as shown by the evidence or the record[.]" **Id.** (citation omitted).

Evidence is admissible if it is relevant. Pa.R.E. 402. The test for relevancy is whether "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Additionally, "[e]vidence of motive is admissible." **Commonwealth v. Hairston**, 84 A.3d 657, 670 (Pa. 2014).

Thomas's claim is meritless. The Commonwealth offered the video for the sole purpose of establishing a motive for the crimes, and the court instructed the jury that it could consider it only for that purpose:

> Ladies and gentlemen, the evidence which the Commonwealth intends to present at this time is offered for a limited purpose only and that is intending to establish a motive for the crimes charged. This must not be considered by you in any other way other than for the purpose I have just stated.

Rule 1925(a) Op. at 15 (citing N.T., 10/27/10, at 150).

Upon review of the video, we discern no abuse of discretion by the trial court. The evidence was relevant to show Thomas's motive to commit the murders and attempted murder. The video showed that a relationship between

- 9 -

the parties existed and their involvement with the drug-selling business, providing a motive for the killings by Thomas. Furthermore, any potential prejudice Thomas may have suffered from the jury hearing him identify himself in the video as C-Murder was cured by the court's limiting instruction. *See Commonwealth v. Cole*, 167 A.3d 49, 77 (Pa.Super. 2017) (noting "jury is presumed to have followed the court's instructions"). Moreover, Ruffin identified Thomas in the video and testified that he called Thomas by his nickname, "C Murder or Cash." N.T., 10/27/10, at 151. The court therefore properly allowed the Commonwealth to argue its theory of the case to the jury based on the trial evidence, which included the video and Ruffin's testimony about Thomas's nickname. *See Miller*, 172 A.3d at 644 ("it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt") (quoting *Commonwealth v. Burno*, 94 A.3d 956, 974 (Pa. 2014)). As for the failure to play other videos at trial, Thomas never asked the court to do so.

Thomas's next two issues address testimony elicited by the Commonwealth about Thomas's arrest for the cocaine found in his underwear. During the direct examination of Detective Donald Marano, the following exchange occurred:

> Q [(Commonwealth)]: If I could have C-157 shown to the detective. Do you recognize that?
>
> A [(Detective Marano)]: Yes.

Q: And what is that?

A: That is a firearm individual unit ballistic report and it is a preformatted report and it is filled in by a trained firearm investigator and it was Officer Cannon.

Q: Did you have that on May 3rd?

A: No.

Q: Did you talk to the DA's office in May of 2006?

A: No.

Q: How come?

A: This investigation wasn't complete at that time. We could have submitted more information that could have been more convincing to the DA's office. There is a potential for that, because I have to prove or convince the DA's office that we are arresting the perpetrator of a crime. I have to prove that to them first after I have proven it to myself, I have to show it to the DA's office.

Q: When did you get the ballistic report?

A: It was so extensive and so much evidence it was not completed until December of 2006.

**Q: At that time, were you aware that [Thomas] was under arrest for the cocaine found on his person?**

**A: He had been, yes.**

N.T., 11/1/10, at 36-37 (emphasis added).

Defense counsel objected, moved for a mistrial, and in the alternative asked for a cautionary instruction. *See id.* at 37. Counsel argued that the evidence was highly prejudicial, lacked probative value, and noted that Thomas was not charged for the drugs. *See id.* In response, the Commonwealth stated that defense counsel's opening statement to the jury was "that [the Commonwealth] didn't arrest [Thomas] because we didn't

believe Brian Ruffin." *Id.* at 38. It explained the police "had [Thomas] arrested on the drugs and they were going to continue to wait for the ballistics and other information until they decided to make the arrest for the murder." *Id.*

The court denied the motion for a mistrial and the request for a cautionary instruction. It stated, "I don't think it is necessary. If you can convince me, I will. Right now I don't think it is necessary. What can we say? There is no secret that the guy is a drug dealer. What the heck is the secret?" *Id.* The Commonwealth then proceeded to ask Detective Marano if at the time he received the firearms report, he was aware that Thomas had been arrested for the drugs, and he responded, "Yes." *Id.* at 39.

Thomas maintains that the Commonwealth asserted to the court that it intended "to introduce the drugs, but we are not moving on the charge[.]" Thomas' Br. at 54 (citing N.T., 10/20/10, at 11, 14). Based on this, Thomas claims that he did not ask the court to sever the drug charge. He alleges that although the officer testified that he was waiting on a ballistics report before arresting Thomas, the evidence shows that the firearms report was completed at least two years before police secured an arrest warrant for Thomas for the murders. He further claims that the court should have given a cautionary jury instruction and by failing to do so, the court "invited the jury to conflate [Thomas'] drug dealing as being proof of his identity as the killer." *Id.* at 57. Thomas also notes that the prosecutor argued before the jury that the presence of drugs was evidence of Thomas's guilt.

We review the denial of a motion for a mistrial for an abuse of discretion. ***Commonwealth v. Chamberlain***, 30 A.3d 381, 422 (Pa. 2011). "A mistrial is warranted when a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." ***Commonwealth v. Parker***, 957 A.2d 311, 319 (Pa.Super. 2008) (citation omitted). Additionally, a mistrial should be granted "only when an incident is of such a nature that its unavoidable effect is to deprive the [defendant] of a fair and impartial trial." ***Commonwealth v. Bennett***, 225 A.3d 883, 890 (Pa.Super. 2019) (citation omitted).

The reference to Thomas's arrest did not warrant a mistrial and as such a cautionary instruction was not required. ***Commonwealth v. Sanchez***, 82 A.3d 943, 982 (Pa. 2013) (stating decision to give a cautionary instruction is within discretion of court). The Commonwealth explained that it elicited the testimony about the arrest in response to the defense's opening statement that police delayed their arrest of Thomas because they did not believe Ruffin's accusation that Thomas was the killer. The mention of this arrest was brief, and the Commonwealth continued with its examination of Detective Morano without any further discussion of Thomas's arrest. This is not a case where the jury could have inferred that Thomas had engaged in prior criminal activity as it was already aware of the underlying criminal activity giving rise to the arrest, *i.e.* possessing cocaine. **See** N.T., 10/27/10, at 28 (Commonwealth's opening statement that Thomas had 132 grams of cocaine in his underwear); N.T., 10/28/10, at 121 (paramedic that treated Thomas testifying that he

recovered cocaine from Thomas's underwear). Thus, the mention of his arrest for the cocaine was not "of such a nature that its unavoidable effect" to deprive him of a fair and impartial trial. **Bennett**, 225 A.3d at 890; **see also Parker**, 957 A.2d at 321 ("A singular, passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial"). The trial court did not abuse its discretion.

Thomas's final issue addresses the weight of the evidence. He claims that the alleged "blood contamination issue and the failure to test Ruffin's clothing should be sufficient to shock one's sense of justice." Thomas's Br. at 60. He argues that all the evidence identifies Ruffin as the murderer, and notes the Commonwealth's "successful attempts to smear [Thomas] as a drug dealer and make him unlikable to the jury." **Id.** at 61. He further claims that "the detectives failed to investigate this double homicide thoroughly and fairly." **Id.**

We review the trial court's ruling on a weight challenge for abuse of discretion. **See Commonwealth v. Ferguson**, 107 A.3d 206, 213 (Pa.Super. 2015). We "give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court determination that the verdict is against the weight of the evidence." **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). An appellant may succeed on a weight challenge, where he or she establishes that "the evidence supporting the conviction is 'so tenuous, vague, and uncertain that the verdict

- 14 -

shocks the conscience of the court.'" ***Commonwealth v. McFarland***, 278 A.3d 369, 385 (Pa.Super. 2022) (quoting ***Commonwealth v. Akhmedov***, 216 A.3d 307, 326 (Pa.Super. 2019) (*en banc*)).

Here, the trial court properly exercised its discretion in dismissing this claim. As fact-finder, the jury was free to believe all part or none of the evidence presented and could determine the credibility of witnesses. ***See Commonwealth v. Wallace***, 244 A.3d 1261, 1276 (Pa.Super. 2021). The jury heard testimony from Ruffin, numerous police officers, paramedics who arrived at the scene shortly after the shooting, and the firearms expert. It also heard testimony regarding DNA evidence recovered from Thomas's clothing as well as the firearm found near his person at the scene of the crime. Considering all the evidence presented in the case, Thomas has not met his burden of establishing that "the evidence supporting the conviction is 'so tenuous, vague, and uncertain that the verdict shocks the conscience of the court.'" ***McFarland***, 278 A.3d at 385.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/9/2025